**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

UNITED STATES *ex rel.*　　　　　　　)
KAREN BLOOMFIELD,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Relator/Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　)　Civil Action No. 1:22-cv-00789-DJN-IDD
　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
ENGINEERED STRUCTURES, INC.,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　　)

**DEFENDANT ENGINEERED STRUCTURES, INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Jason M. Crawford, VA Bar No. 83781
Amy Laderberg O'Sullivan, VA Bar No. 44267
Agustin D. Orozco (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
JCrawford@crowell.com
AOSullivan@crowell.com
AOrozco@crowell.com

*Counsel for Defendant Engineered Structures, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................2

    A.    CARES Act and SBA Guidance on PPP Loans.................................................2

        1.    Initial Loan Eligibility.............................................................................3

        2.    Employee Calculation...........................................................................3

        3.    Certifications on Initial Loan Application ...............................................4

        4.    Forgiveness Eligibility...........................................................................5

    B.    Impact of the Pandemic on ESI, the Company's Loan Application,
        and Subsequent Loan Forgiveness.................................................................6

    C.    Procedural History ........................................................................................6

    D.    Relator's Allegations ....................................................................................7

LEGAL STANDARD.........................................................................................................8

ARGUMENT ...................................................................................................................9

I.      COUNT I MUST BE DISMISSED FOR FAILURE TO SUFFICIENTLY
       PLEAD A CAUSE OF ACTION UNDER § 3729(A)(1)(A). ...............................9

    A.    The Complaint Fails to Allege That the Reported Employee Count
        on the Loan Application Was False..............................................................9

    B.    ESI's Alleged Purchase of an Aircraft Is Irrelevant to the Falsity
        Allegations .................................................................................................13

    C.    The Complaint Fails to Allege That ESI's Economic Necessity
        Certification Was False................................................................................14

II.    THE § 3729(A)(1)(B) CAUSE OF ACTION (COUNT II) SIMILARLY
     FAILS TO SATISFY THE PLEADING REQUIREMENTS OF RULES
     8(A) AND 9(B). ................................................................................................15

III.   THE § 3729(A)(1)(G) CAUSE OF ACTION (COUNT III) FAILS TO
     SATISFY THE PLEADING REQUIREMENTS OF RULES 8(A) AND
     9(B). .................................................................................................................15

CONCLUSION................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agarwal v. United States*,
No. 18-cv-03125, 2019 WL 2476613 (D.D.C. June 13, 2019)..................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................8, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................8

*United States ex rel. Branscome v. Blue Ridge Home Health Servs., Inc.*,
No. 16cv00087, 2018 WL 1309734 (W.D. Va. Mar. 13, 2018)............................................16

*United States ex rel. DeCesare v. Americare In Home Nursing*,
757 F. Supp. 2d 573 (E.D. Va. 2010) ...................................................................................15

*Edmonson v. Eagle Nat'l Bank*,
922 F.3d 535 (4th Cir. 2019) ................................................................................................14

*United States ex rel. Grant v. United Airlines Inc.*,
912 F.3d 190 (4th Cir. 2018) ......................................................................................9, 14, 15

*Hicks v. Resol. Tr. Corp.*,
767 F. Supp. 167 (N.D. Ill. 1991), *aff'd on other grounds*, 970 F.2d 378 (7th
Cir. 1992) ................................................................................................................................7

*United States ex rel. Houpt v. Wells Fargo Bank, N.A.*,
No. 17-cv-00377, 2019 WL 591441 (D. Idaho Feb. 13, 2019) ..............................................7

*United States ex rel. Nathan v. Takeda Pharm. N.A., Inc.*,
707 F.3d 451 (4th Cir. 2013) ..............................................................................................8, 9

*Pencheng Si v. Laogai Rsch. Found.*,
71 F. Supp. 3d 73 (D.D.C. 2014) .........................................................................................16

*United States v. Carranza*,
No. 22-cv-189, 2022 WL 3226191 (E.D. Va. July 1, 2022), *aff'd sub nom.*
*United States ex rel. Donohue v. Loudoun Cnty. Pub. Sch. Dist.*, No. 22-1835,
2023 WL 7548198 (4th Cir. Nov. 14, 2023)..........................................................................16

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370 (4th Cir. 2008) ..................................................................................................9

*Woods v. City of Greensboro*,
    855 F.3d 639 (4th Cir. 2017) ...................................................................................8

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ...................................................................................3

**Statutes**

12 U.S.C. § 1833a ..................................................................................................7

31 U.S.C. § 3729(a)(1)(A) ...........................................................................7, 9, 16

31 U.S.C. § 3729(a)(1)(B) .........................................................................7, 15, 16

31 U.S.C. § 3729(a)(1)(G) ........................................................................7, 15, 16

31 U.S.C. § 3729 *et seq* ...........................................................................................2

Pub. L. No. 116-136, 134 Stat. 281 (2020)............................................................2

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................14

Fed. R. Civ. P. 8(a) ....................................................................................... *passim*

Fed. R. Civ. P. 9(b) ....................................................................................... *passim*

Fed. R. Civ. P. 12(b)(1)............................................................................................7

Fed. R. Civ. P. 12(b)(6).................................................................................1, 3, 16

**Regulations**

85 Fed. Reg. 20811 (Apr. 15, 2020) ................................................................3, 4, 5

Pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) and Local Civil Rule 7, Defendant Engineered Structures, Inc. ("ESI" or the "Company") provides this memorandum in support of its Motion to Dismiss.

## INTRODUCTION

Affected financially by the COVID-19 pandemic, as many were, Relator has made a desperate attempt to recover funds under the False Claims Act ("FCA") alleging that ESI fraudulently obtained its Paycheck Protection Program ("PPP") loan. However, the Complaint falls short of identifying anything false in ESI's loan application, much less plead any facts that ESI knowingly provided false information that was material to the government's decision to approve the loan. While the Complaint relies on social media posts and general information available on ESI's website, far more is required to state viable claims for relief, particularly where, as here, fraud is alleged.

ESI, a privately-owned general contracting and construction management firm, appropriately followed available guidance and met the PPP requirements at the time it applied for a loan in April 2020. At the start of 2020, ESI was anticipating that it would experience a record-breaking year for its business. But that forecast changed dramatically in March 2020 when the COVID-19 pandemic swept across the country and caused tremendous uncertainty and substantial interruption to ESI's operations as projects were postponed or canceled outright. Faced with these unprecedented challenges, ESI made the difficult decision to lay off a sizable number of employees. To avoid further layoffs, ESI applied for a PPP loan. Following the guidance provided by the United States Small Business Administration ("SBA") for calculating the number of employees, ESI listed 490 employees on its PPP loan application. The Company's loan application was approved, and the loan was subsequently forgiven.

Relator Karen Bloomfield was among the employees laid off due to the pandemic's significant impact on ESI's business.  Disgruntled by her termination, Relator filed this lawsuit alleging that she and others at the Company were laid off because ESI was "manipulating its workforce numbers and accounting to secure funds from the SBA's PPP," (Compl. ¶ 11) in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA").  Her thirty-page Complaint contains detailed background on the PPP and the FCA, but the allegations specific to ESI and the purported scheme (Compl. ¶¶ 40-54) are conspicuously thin on details.  According to the Complaint, Relator was working as a Senior Assistant Project Manager at ESI at the time of the layoffs (Compl. ¶ 11), but her barebone allegations about the Company's PPP loan application make clear that her position in the Company did not provide her with any visibility into the contents of ESI's PPP application; nor does she purport to know any details of how the Company calculated the 490 employees listed on the loan application.  Rather, the Complaint cobbles together information from publicly-available sources—such as an old Instagram post—as a basis for speculating that the Company's reported employee count on the loan application must have been false.  As set forth below, these threadbare allegations do not comply with Rules 8(a) and 9(b) of Federal Rules of Civil Procedure, and the Complaint should be dismissed in its entirety for failure to state an actionable claim.

## **BACKGROUND**

### A.     **CARES Act and SBA Guidance on PPP Loans**

On March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to provide emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic.  Compl. ¶ 14; Pub. L. No. 116-136, 134 Stat. 281 (2020).  Section 1102 of the CARES Act created the PPP and authorized the SBA to administer the program.  *Id.*  Section 1106 of the Act provided for

2

forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP under certain specified circumstances.

### 1.   Initial Loan Eligibility

On April 2, 2020, the SBA posted an interim final rule ("IFR") announcing the implementation of the CARES Act.  Compl. ¶ 15.  The IFR was published in the Federal Register on April 15, 2020.  85 Fed. Reg. 20811 (Apr. 15, 2020).  The IFR stated that applicants had to submit a Borrower Application Form ("SBA Form 2483") to establish eligibility.  Compl. ¶ 19; 85 Fed. Reg. at 20812-13.[1]  Under the program, the PPP loan applications were to be processed and approved by SBA approved lenders.  Compl. ¶ 15.  The IFR included instructions to help employers determine whether they qualified for a PPP loan.  *Id.*; 85 Fed. Reg. at 20812.  Namely, an employer was eligible for a loan if the applicant had 500 or fewer employees; was a small business concern; was in operation on February 15, 2020; and had employees for whom the borrower paid salaries and payroll taxes.  *Id.*  ESI met all of these requirements.

### 2.   Employee Calculation

To assist borrowers in complying with the guidance in the IFR, the SBA published *Paycheck Protection Program Loans Frequently Asked Questions ("FAQs")*.  Compl. ¶ 26; Exhibit A.[2]  At the time that ESI's loan application was approved on April 12, 2020, FAQ #14

---

[1]  The Complaint refers to the SBA Form 2483 as a BAF.

[2]  Ordinarily on a Rule 12(b)(6) motion, courts consider only the allegations in the complaint, but a court is permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity."  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (internal quotation marks and citations omitted).  Here, the FAQs are integral to and explicitly relied on in the Complaint.  Compl. ¶ 26.  The April 8, 2020 version of the FAQs that were in effect at the time ESI's loan was approved on April 12, 2020 is attached to the motion as Exhibit A.  During the course of the PPP program, the SBA revised the answers to several of the questions, but borrowers were permitted to rely on SBA guidance at the time of their application.  *See* SBA PPP Loan FAQs, FAQ #17 (Apr. 8, 2020) ("Borrowers and lenders may rely on the laws,

included the following guidance on how loan applicants could calculate the number of employees

to list on the loan application:

> 14. **Question**: What time period should borrowers use to determine their number of employees and payroll costs to calculate their maximum loan amounts?
>
> **Answer:** In general, borrowers can calculate their aggregate payroll costs using data either from the ***previous 12 months or from calendar year 2019*** .... ***Borrowers may use their average employment over the same time periods to determine their number of employees***, for the purposes of applying an employee-based size standard.  Alternatively, borrowers may elect to use SBA's usual calculation: the average number of employees per pay period in the ***12 completed calendar months prior to the date of the loan application***[.]

Exhibit A (emphasis added).

Consistent with the guidance of FAQ #14, if a company applied for a PPP loan in early

April of 2020, the company could use the average employee count for each of the pay periods in

calendar year 2019 or from the 12 completed calendar months prior to the date of the loan

application—*i.e.*, March 2019 through March 2020.  Accordingly, within either period of

measurement, the headcount for a given pay period could have been above 500 employees so long

as the average headcount for the period of measurement was below 500 employees.

### 3.      Certifications on Initial Loan Application

The IFR further explained that when completing SBA Form 2483, the applicant would

need to make several certifications.  Compl. ¶ 21; 85 Fed. Reg. at 20814.  Among the certifications

that all applicants were required to make on SBA Form 2483 were the following, which Relator

alleges ESI did not make in good faith:

---

rules, and guidance available at the time of the relevant application.  However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs.").

> 3. The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule.…
>
> 4. The Applicant will provide to the Lender documentation verifying the number of fulltime equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.
>
> 7. I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects.…
>
> 8. I acknowledge that the lender will confirm the eligible loan amount using required documents submitted.…

Compl. ¶¶ 25, 49; ECF 1-1.[3]  Relator's conclusory allegations, however, are misguided, as Relator fails to allege facts that ESI failed to comply with the requirements in the IFR in applying for its loan or for seeking loan forgiveness.

### 4.      Forgiveness Eligibility

The IFR also addressed PPP loan forgiveness.  Compl. ¶ 17; 85 Fed. Reg. at 20813-14. Specifically, the IFR explained that loan forgiveness would be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities. *Id.*  On May 15, 2020, the SBA released its PPP Loan Forgiveness Application ("SBA Form 3508").  In completing the loan forgiveness application, borrowers had to make several certifications including that the dollar amount for which forgiveness was requested was used to pay business costs that were eligible for forgiveness.[4]

---

[3]   Although the certifications listed on page 2 of SBA Form 2483 are not numbered, for consistency, ESI refers to the numbering used in the Complaint when referencing specific certifications.

[4]   The loan forgiveness application is integral to and explicitly relied on in the Complaint. Compl. ¶ 54.  A sample loan forgiveness application ("SBA Form 3508") is attached to the motion as Exhibit B.

B.    **Impact of the Pandemic on ESI, the Company's Loan Application, and Subsequent Loan Forgiveness**

The Complaint alleges that on March 27, 2020, ESI leadership notified a number of field and office staff (approx. 80-100) that the Company had to "temporarily reduce its workforce" due to the COVID-19 pandemic's impact on ESI's business.  Compl. ¶ 43.[5]  The letter states that "[t]he current COVID-19 pandemic has impacted ESI's business significantly, and, as a result, we find that we must make some very difficult personnel decisions.  Effective April 1, 2020, ESI must temporarily reduce its workforce, and you are included in this temporary layoff."  *See* Exhibit C.  As alleged in the Complaint, Relator was among the laid off employees.

In early April, to avoid the need for further layoffs, the Company applied to Idaho First Bank for a PPP loan.  Compl. ¶ 50.  The Idaho First Bank was among the more than 5,000 SBA-approved lenders that participated in the PPP.  Compl. ¶ 18.  Like all SBA-approved lenders, the Idaho First Bank was responsible for determining borrower eligibility under the SBA's criteria.  Compl. ¶ 15.

As alleged in the Complaint, ESI was approved for a PPP loan of $8,607,900 on April 12, 2020.  Compl. ¶ 48.  The Company subsequently submitted a loan forgiveness application using SBA Form 3508, along with the required supporting documentation.  The loan was forgiven as of June 11, 2021.  Compl. ¶ 50.

C.    **Procedural History**

This case was initiated on July 14, 2022 in the United States District Court for the Eastern District of Virginia as a *qui tam* action under the FCA.  ECF No. 1.  Following a period of

---

[5]    The March 27, 2020 letter notifying personnel of the COVID-19 layoffs is integral to and explicitly relied on in the Complaint.  Compl. ¶ 43.  The letter is attached to the motion as Exhibit C.

investigation into the Relator's allegations, the United States opted not to intervene in the action and filed a Notice of Election to Decline Intervention on December 12, 2023.  ECF No. 17.  The Complaint was subsequently unsealed (ECF No. 18), and ESI was served with the Complaint on March 7, 2024.  Subsequently, the Court granted a Motion for Extension on Time, extending the deadline to file a responsive motion until May 27, 2024.  ECF No. 29.

### D.    Relator's Allegations

Relator's *qui tam* Complaint contains three causes of action: (Count I) ESI violated § 3729(a)(1)(A) of the FCA by presenting false claims for payment; (Count II) ESI violated § 3729(a)(1)(B) by making false statements material to a false claim; (Count III) ESI violated § 3729(a)(1)(G) by concealing or improperly avoiding or decreasing an obligation to transmit money to the government.[6]

The Complaint alleges that ESI submitted "false and fraudulent statements on its initial application" (Compl. ¶ 54) because ESI purportedly did not meet the requisite criteria for PPP loan eligibility.  Compl. ¶ 27.  Specifically, Relator alleges that ESI misrepresented the number of employees on its application and in the supporting information provided to the lender.  Compl.

---

[6]    The Complaint also includes several references to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a ("FIRREA").  Compl. ¶¶ 1, 38-40.  The Complaint does not include a separate count for a FIRREA claim, but to the extent the Court construes the Complaint as pleading a cause of action under FIRREA, this claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the government elected not to intervene in this case and the Relator lacks standing to pursue FIRREA penalties on behalf of the government. *See Agarwal v. United States*, No. 18-cv-03125, 2019 WL 2476613, at *3 (D.D.C. June 13, 2019) ("[S]uits under FIRREA must be brought by the government rather than by a private party."); *United States ex rel. Houpt v. Wells Fargo Bank, N.A.*, No. 17-cv-00377, 2019 WL 591441, at *15-16 (D. Idaho Feb. 13, 2019) (granting summary judgment to defendant on individual's FIRREA claims on the grounds that Section 1833a does not authorize an individual to pursue FIRREA penalties on behalf of the government absent express contractual authorization from the Attorney General to do so in a given case); *Hicks v. Resol. Tr. Corp.*, 767 F. Supp. 167, 171 (N.D. Ill. 1991), *aff'd on other grounds*, 970 F.2d 378 (7th Cir. 1992).

¶¶ 2, 28.  Relator further alleges that ESI laid off approximately 100 employees in order to claim that the Company only employed 490 workers, which would be just below the threshold requirement for SBA PPP Loan approval.  Compl. ¶ 48.  Relator also alleges that ESI purchased an aircraft soon after receiving the PPP loan.  Compl. ¶ 52.

As set forth below, the allegations do not state a claim under any provision of the FCA, and the Complaint should be dismissed.

## LEGAL STANDARD

To withstand a motion to dismiss, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  A complaint meets this standard when it contains allegations of fact "sufficient 'to raise a right to relief above the speculative level,' including sufficient facts to state a claim that is 'plausible on its face.'"  *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  And as the United States Court of Appeals for the Fourth Circuit has made clear, a plaintiff must "do more than 'plead[ ] facts that are merely consistent with a defendant's liability;' the facts alleged must 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Woods*, 855 F.3d at 647 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Further, claims asserting fraud—as do all three counts in the Complaint—must clear an additional pleading hurdle under Rule 9(b).  "In alleging fraud, . . . a party must state with particularity the circumstances constituting [the] fraud[.]"  Fed. R. Civ. P. 9(b).  This heightened pleading standard has "multiple purposes," including "providing notice to a defendant of its alleged misconduct, of preventing frivolous suits, . . . and . . .  protect[ing] defendants from harm to their goodwill and reputation."  *See United States ex rel. Nathan v. Takeda Pharm. N.A., Inc.*,

8

707 F.3d 451, 456 (4th Cir. 2013) (internal quotation marks and citation omitted); *see also United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018).   Accordingly, the Fourth Circuit has long "adhered firmly to [its] strictures" by dismissing claims that fail to offer particularized allegations of fraud.  *Nathan*, 707 F.3d at 456.

## ARGUMENT

### I.   COUNT I MUST BE DISMISSED FOR FAILURE TO SUFFICIENTLY PLEAD A CAUSE OF ACTION UNDER § 3729(A)(1)(A).

To state a *prima facie* case under § 3729(a)(1)(A), a relator must allege facts that—if accepted as true—would establish that: "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (internal quotation marks and citation omitted).  As set forth below, the Complaint falls short of identifying anything false in ESI's loan application much less plead any facts that ESI knowingly provided false information that was material to the decision to approve and forgive ESI's PPP loan.

### A.   The Complaint Fails to Allege That the Reported Employee Count on the Loan Application Was False.

Here, the gravamen of the Complaint is that ESI "falsified" that it was eligible for a PPP loan.  Compl. ¶ 27.[7]  In support of this allegation, Relator argues that the 490-employee figure on ESI's loan application was false in April 2020 because the Company purportedly had a "long history of employing over 500 employees" (Compl. ¶ 13), and the Company allegedly manipulated

---

[7]   The Complaint also implies that the "dollar amounts of payroll costs" included on ESI's application were false (Compl. ¶ 1), but the Complaint is devoid of any allegations about the payroll costs that ESI reported nor does the Complaint include any detail identifying how the reported information was inaccurate.

its employee numbers by laying off approximately 80-100 employees effective April 1, 2020 (Compl. ¶¶ 11, 43).[8]  However, Relator fails to plead sufficient facts in support of her allegations for three reasons: (1) the layoffs effective April 1, 2020 would not affect the number of employees reported on the loan application under the periods of measurement used by the SBA; (2) Relator's reliance on the 2019-2020 *Idaho Business Review Book of Lists* and the June 8, 2018 social media post on ESI's Instagram account is similarly misplaced because the relevant number of employees is based on a 12-month average within SBA's specified periods of measurement; and (3) the round numbers listed on ESI's website are a far cry from the sufficient facts needed to raise a right to relief above a speculative level.

First, the Complaint alleges that ESI laid off employees before applying for the PPP loan in April 2020 in order to manipulate the Company's employee count, but the Complaint conveniently fails to address SBA's guidance for calculating the numbers of employees for the purposes of applying for a loan.  Pursuant to the SBA's guidance in FAQ #14, when submitting a PPP loan application in April 2020, there were several ways in which ESI could calculate its number of employees for purposes of eligibility: (1) ESI could use the average employee count for each of the pay periods in calendar year 2019; or (2) ESI could use the average employee count

---

[8]   The Complaint notes that there were certain "exceptions" that would allow a borrower with more than 500 employees to be eligible for a PPP loan.  Compl. ¶ 26.  For instance, a borrower with more than 500 employees could still be eligible for the PPP if it qualified as a "small business concern" under the revenue-based size standard corresponding to its primary industry.  Compl. ¶ 27.  The Complaint alleges that ESI could not qualify as a small business concern under the revenue-based size standard because ESI's average annual receipts exceeded the threshold set forth in the SBA's revenue-based standard for the construction sector.  But the question of whether ESI's average annual receipts exceeded the revenue-based threshold is of no moment in this case because the Complaint fails to adequately plead that ESI was ineligible under the employee-based size standard, and so the Court does not need to address the allegation that the Company could not qualify under an exception such as the revenue-based size standard.

for each of the pay periods from the "12 completed calendar months prior to the date of the loan application"—*i.e.*, March 2019 through March 2020.

As alleged, the effective date of the layoffs was April 1, 2020.  Compl. ¶ 43; Exhibit C.  As such, these layoffs would not change ESI's calculation of the average employee count regardless of which period of measurement was used—*i.e.*, the April 1, 2020 layoffs would have no impact on the employee count in calendar year 2019 nor would the layoffs impact the average employee count between March 2019 and March 2020 because the laid off employees would still be reflected in the pay periods for March 2020.  Stated simply, the alleged facts do not support an inference that ESI was manipulating its employee count.

<u>Second</u>, the allegations in the Complaint do not rise above a speculative level because even if the Court accepts as true that ESI had 500 employees on June 8, 2018 (at the time of the Instagram post) and 500 employees at some point during 2019-2020 (during the period covered by the *Idaho Business Review Book of Lists*), it does not follow that the 490 employees that ESI listed on its PPP loan application was a false statement.  *See* Compl. ¶ 45.  As described above, the guidance in FAQ #14 stated that loan applicants could use the *average employee count* for each of the 26 pay periods in calendar year 2019 or the 12 completed calendar months prior to the date of the loan application (*i.e.*, March 2019-March 2020) as the basis for the employee count on the application.  Thus, even if the Court accepts as true that there were 500 employees on June 8, 2018, at the time of the social media post, this date would fall well outside either of the time periods prescribed in the response to FAQ #14.  Similarly, the allegation that ESI reported having 500 employees—at some point during the 2019-2020 time period—to the *Idaho Business Review* would not establish that the 490 employees that ESI listed on its PPP loan application was false.  ESI could have had fewer employees (*e.g.*, 480 employees) during other pay periods within the

period of measurement such that the average would equal to the 490 employees that was reported on the PPP loan application.

Third, the allegation that there are 500 employees listed on ESI's webpage does not create a reasonable inference that the 490 employees listed on ESI's PPP loan application was a false statement because common sense dictates that the numbers listed on the website are approximations.  *See* Compl. ¶ 47.  Other metrics on the ESI website—as excerpted in the Complaint—are also approximate (round) numbers rather than exact values—*e.g.*, "1,000,000 cubic yards of concrete poured" and "150,000 tons of steel hung."  Consistent with the use of other approximate numbers on the website, the Court should find the reference to 500 employees on the ESI website does not plausibly allege that ESI's listing of 490 employees on its loan application was false.  *See Iqbal*, 556 U.S. at 679 (noting that courts can draw upon "judicial experience and common sense" when determining whether a complaint crosses the plausibility threshold).

Even if the Court were to accept as true the allegation that the ESI website listed the *actual* number of employees—rather than an approximation—the number of employees allegedly listed on the webpage at various dates in time would still not establish that the 490 employees listed on ESI's PPP loan application was false.  Indeed, the Complaint alleges that "internet archives" captured ESI's webpage on 9 occasions in calendar year 2019, and 8 occasions during the 12 completed calendar months prior to the date of the loan application (*i.e.*, March 2019-March 2020).  Relator avers that on each of those dates, the ESI website stated that the Company had 500 or more employees.  Compl. ¶ 45.  But the "internet archives" relied upon in the Complaint do not capture the relevant information needed to determine employee count for purposes of obtaining a PPP loan: the average employee count from <u>all</u> of the pay periods within either period of measurement (*i.e.*, calendar year 2019 or March 2019-March 2020).  In other words, even if the information

pulled from ESI's website reflected actual employee counts, rather than mere approximations, the information cited in the Complaint would still not meet the heightened pleading requirements for alleging falsity because lower employee counts from other pay periods within the period of measurement could result in an average of 490 employees for the year.

### B.    ESI's Alleged Purchase of an Aircraft Is Irrelevant to the Falsity Allegations

The Complaint also includes several allegations about an aircraft that ESI purportedly purchased after the Company received the PPP loan.  In several places, the Complaint references the alleged timing of the purchase (following receipt of the loan) without identifying *any* legal requirement that ESI supposedly violated in connection with the purchase.  Instead, Relator simply notes that the purchase "just happens to coincide" with ESI's receipt of the loan.  *See, e.g.*, Compl. ¶ 52.  Importantly, Relator relies on registration records, not purchase records, for her allegations.  However, Relator does not provide any details as to when the plane was purchased, whether the registration date relied on in the Complaint was the first time the plane was registered, how often planes need to be registered with the FAA, or whether ESI registered this or any other planes in the past.  Relator is simply raising speculative arguments in her Complaint without providing any facts relevant to her allegations.[9]

Even if the Complaint's timeline of events regarding the purchase of the aircraft was factually correct (and it is not), the allegation would still fail to meet the heightened requirements for pleading falsity because the Complaint does not identify <u>any</u> prohibition within the PPP requirements against making business purchases after the receipt of a loan nor does the Complaint include any detail explaining how the alleged purchase of the aircraft in November 2020 (eight

---

[9]    Relator lists pictures of "a Cessna525C," not the plane it alleges was purchased by ESI, without explaining how the pictures of a random airplane are relevant to her fraud claim.  *See* Compl. ¶ 52.

months after obtaining the loan) resulted in the submission of a false claim.  *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019); *Grant*, 912 F.3d at 196 ("Rule 9(b) requires that 'a party must state with particularity the circumstances constituting fraud or mistake.'").

Such details about the circumstances constituting fraud in connection with the aircraft cannot be found in the Complaint because such facts do not exist.  In order to seek loan forgiveness, a loan recipient simply had to show that the dollar amount for which forgiveness was requested was used to pay business costs that were eligible for forgiveness.  *See* Exhibit B ("SBA Form 3508").  In other words, even if ESI had purchased the aircraft after receiving the PPP loan (and it did not), this would not preclude the Company from seeking forgiveness so long as ESI could show that the dollar amount for which forgiveness was requested was used to pay business costs that are eligible for forgiveness (*e.g.*, payroll costs, lease payments).  In sum, the allegations about the purchase of an aircraft fall short of the baseline pleading requirements of Rule 8 much less the heightened pleading requirements of Rule 9(b) that apply when alleging fraud.

### C. The Complaint Fails to Allege That ESI's Economic Necessity Certification Was False.

Relator is also unable to plead sufficient facts under Rules 8(a) and 9(b) to establish that ESI falsely certified to the economic necessity of the PPP loan.  Specifically, the Complaint alleges that ESI purportedly could not certify in good faith that "[t]he current economic uncertainty makes this loan necessary to support the ongoing operations of the applicant."  Compl. ¶ 51.  Like her other allegations, Relator does not plead sufficient facts to support this allegation.  The Complaint alleges that "Relator has first-hand knowledge that ESI's net earnings being in excess $6 million for the years prior to the pandemic, which were consistent with ESI's December 31, 2020, year-end net earnings."  *Id.*  But ESI's net earnings for years <u>prior</u> to the pandemic are of no moment when assessing whether ESI made a good faith certification in April 2020, at the height of the

pandemic, that the <u>current</u> economic uncertainty made the loan request necessary.  Moreover, Relator claims to have first-hand knowledge of ESI's earnings prior to the pandemic and in December 2020, after she no longer worked for ESI, but is unsurprisingly quiet about ESI's financial condition at the end of March 2020 when she still worked for the Company.  ESI's financial position at the time ESI applied for the loan is the only time period relevant here.  Therefore, the allegations in paragraph 51 are irrelevant and fall far short of both the plausibility and particularity requirements needed to plead an FCA cause of action.

## II.   THE § 3729(A)(1)(B) CAUSE OF ACTION (COUNT II) SIMILARLY FAILS TO SATISFY THE PLEADING REQUIREMENTS OF RULES 8(A) AND 9(B).

Section 3729(a)(1)(B) creates liability for one who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  To properly plead a cause of action under § 3729(a)(1)(B), a complaint must plead a connection between the alleged false records or statements and an actual claim made to the government.  *Grant*, 912 F.3d at 196-97.  Here, Count II should be dismissed because as set forth above, there is no underlying false claim, which is a prerequisite for a violation of § 3729(a)(1)(B).  *See United States ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 585 (E.D. Va. 2010) (finding that a false-record cause of action must allege both (1) a false record or statement and (2) a false claim paid by the government).

## III.  THE § 3729(A)(1)(G) CAUSE OF ACTION (COUNT III) FAILS TO SATISFY THE PLEADING REQUIREMENTS OF RULES 8(A) AND 9(B).

Unable to plead a viable claim that ESI made a false certification at the time of its initial loan application, the Complaint alleges that ESI violated § 3729(A)(1)(G) when the Company "knowingly retained the payments instead of returning them to the government[.]"  Compl. ¶ 28.

But Relator fails to plead the *prima facie* elements of a cause of action brought under § 3729(a)(1)(G).  The "reverse false claim" provision of the FCA only imposes liability on a

defendant who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." *See* 31 U.S.C. § 3729(a)(1)(G); *United States v. Carranza*, No. 22-cv-189, 2022 WL 3226191, at *7 (E.D. Va. July 1, 2022), *aff'd sub nom. United States ex rel. Donohue v. Loudoun Cnty. Pub. Sch. Dist.*, No. 22-1835, 2023 WL 7548198 (4th Cir. Nov. 14, 2023).

Here, the Complaint points to the same conduct that forms the basis of the allegations underlying Counts I and II as its basis for its allegations for Count III. Compl. ¶ 55 ("Instead of returning the ill-gotten funds to the United States Government, ESI knowingly retained the funds, which is also a violation of the False Claims Act."). But it is well-settled that reverse false claim liability under § 3729(a)(1)(G) cannot arise from the same conduct underlying § 3729(a)(l)(A) and (a)(1)(B) causes of action. *See, e.g.*, *United States ex rel. Branscome v. Blue Ridge Home Health Servs., Inc.*, No. 16cv00087, 2018 WL 1309734, at *5 (W.D. Va. Mar. 13, 2018); *Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 97 (D.D.C. 2014) ("And of course, if the conduct that gives rise to a traditional presentment or false statement action also satisfies the demands of section 3729(a)(1)(G), then there would be nothing 'reverse' about an action brought under that latter section of the FCA."). For failing to allege conduct that can be distinguished from the conduct alleged in Counts I and II, Count III must also be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, ESI respectfully requests that the Complaint be dismissed under Rule 12(b)(6) for failure to meet the pleading standards of Rules 8(a) and 9(b).

Dated:  May 14, 2024

Respectfully Submitted,

*/s/ Jason M. Crawford*
Jason M. Crawford, VA Bar No. 83781
Amy Laderberg O'Sullivan, VA Bar No. 44267
Agustin D. Orozco (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
JCrawford@crowell.com
AOSullivan@crowell.com
AOrozco@crowell.com

*Counsel for Defendant Engineered Structures, Inc.*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of May 2024, I electronically filed the foregoing

using the Court's NextGen CM/ECF system, which caused service on all counsel of record.

*/s/ Jason M. Crawford*
Jason M. Crawford, VA Bar No. 83781
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
JCrawford@crowell.com

*Counsel for Engineered Structures, Inc.*