IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA *ex rel.*
KAREN BLOOMFIELD,
    Plaintiff,

v.

Civil No. 1:22cv789 (DJN)

ENGINEERED STRUCTURES, INC.,
    Defendant.

## MEMORANDUM OPINION

This False Claims Act case, brought on behalf of the United States by Relator Karen Bloomfield ("Relator" or "Bloomfield" or "Plaintiff"), comes before the Court on Defendant Engineered Structures, Inc.'s ("Defendant" or "ESI") Motion to Dismiss. (ECF No. 41.) ESI contends that Bloomfield's First Amended Complaint (the "FAC") (ECF No. 39) fails to state a claim on any of its three counts. ESI's motion has been fully briefed (ECF Nos. 41-1, 42, 43), and it now stands ripe for resolution. The Court finds that Relator properly pleaded sufficient facts to move beyond the Motion to Dismiss stage; accordingly, the Court DENIES ESI's Motion to Dismiss (ECF No. 41).

### I.    BACKGROUND

The facts recited by Relator's First Amended Complaint ("FAC") (ECF No. 39), which the Court must accept as true for present purposes, reveal the following factual narrative.

This lawsuit arises from the United States Government's pandemic relief programs instituted during the early days of the COVID-19 pandemic. In March 2020, Congress passed and the President signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281. Section 1102 of that Act amended the Small Business Act,

15 U.S.C. § 631 *et seq.*, to create the Paycheck Protection Program ("PPP"), a system of forgivable loans to small businesses that permitted those businesses to keep their employees on their payroll, rather than lay them off.[1] A business seeking such a loan had to certify in good faith "that the uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations of the eligible recipient" and "that [PPP] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments." 15 U.S.C. § 636(a)(36)(G)(i)(I) (enacted by CARES Act § 1102(a)(2), 134 Stat. at 291). As relevant here, a small business would not qualify for a PPP loan unless it "employ[ed] not more than the greater of" 500 employees or a size standard set by the SBA for the business's industry. 15 U.S.C. § 636(a)(36)(D)(i). Section 1106 of the CARES Act permitted businesses with PPP loans to apply for loan forgiveness "equal to the sum of" payroll, mortgage interest, rent and utilities during the period of the loan. CARES Act § 1106(b), 134 Stat. at 298 (codified as amended at 15 U.S.C. § 636m(b)).[2] Acting in accordance with Section 1102 of the CARES Act, the Small Business Administration ("SBA") created a PPP Borrower Application that required applicants to certify that (i) they stood eligible for a PPP loan under governing SBA rules; (ii) they would use loan proceeds only for business-related purposes; (iii) economic

---

[1]  Congress amended the PPP program's details throughout the pandemic, but the basic framework created by the CARES Act remains in place. *See* Paycheck Protection Program and Health Care Enhancement Act (the "Enhancement Act"), Pub. L. No. 116-139, 134 Stat. 620 (2020) (approved Apr. 24, 2020) (expanding PPP eligibility); Paycheck Protection Program Flexibility Act of 2020 (the "Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641 (approved June 5, 2020) (loosening several CARES Act requirements); American Rescue Plan Act of 2021 (the "ARPA"), Pub. L. No. 117-2, § 5001, 135 Stat. 4, 81 (approved Mar. 11, 2021) (further expanding PPP eligibility and providing additional funding).

[2]  If the business cut its workforce or reduced its employees' salaries or wages, the amount of forgiveness would be proportionally reduced. CARES Act § 1106(d), 134 Stat. at 298–99 (codified as amended at 15 U.S.C. § 636m(d)).

2

uncertainty made the PPP loan necessary to support applicants' ongoing operations; and (iv) all information in the application was true and correct.

Defendant Engineered Structures, Inc. ("ESI") is an Idaho corporation with its principal place of business in Meridian, Idaho. ESI maintains a corporate office in Fairfax County, Virginia. Relator Karen Bloomfield, an Idaho citizen, worked for ESI from October 1997 to April 2020, when she was laid off. At the time of her termination, Bloomfield worked as a Senior Assistant Project Manager.

ESI's business involves construction. On March 25, 2020, Idaho's governor deemed that industry essential. On Friday, March 27, 2020, ESI laid off approximately 80 to 100 of its employees, effective April 1, reducing its workforce to approximately 490 employees. Several of Plaintiff's confidential witnesses, however, stated that the layoffs were unnecessary. One witness noted that no ESI jobs were delayed or cancelled and concluded that "the March 27 layoffs did not appear necessary or justifiable under the circumstances." (FAC ¶ 45.) On March 27, ESI told its employees that it hoped economic conditions would recover "within the next 120 days" such that all laid-off employees could be recalled. (FAC ¶ 46.) ESI continued to recruit new hires throughout this period; in Bloomfield's telling, this shows that ESI "[c]learly [] required more than 490 employees." (FAC ¶ 49.) Thus, Bloomfield claims, "ESI's lay-off in late March 2020 and its historical employee count . . . indicate that the company laid off approximately 100 employees just before April 1, 2020 in order to claim that it only employed 490 workers and, therefore, meet the threshold requirement for SBA PPP Loan approval." (FAC ¶ 50.)

In early April, ESI applied for a PPP loan. (FAC ¶ 50.) In doing so, ESI certified that it fell below the 500-employee threshold and that the loan was necessary to support their ongoing

3

operations. (FAC ¶¶ 50, 60.) On April 12, 2020, ESI received an approximately $8.6 million PPP loan from Idaho First Bank. (FAC ¶ 50.) ESI subsequently applied for loan forgiveness, this time certifying that they used the loan exclusively for payroll expenses. (FAC ¶ 50.)

Bloomfield filed a complaint against ESI on July 14, 2022. (ECF No. 1.) On December 12, 2023, the Government notified the Court that it "decline[d] to take over the action," thus giving Bloomfield the right to direct the litigation of this case. 31 U.S.C. § 3730(b)(4)(B), (c)(3); (ECF No. 17). On the same day, the Court unsealed this case and directed Bloomfield to serve ESI with process.[3] (ECF No. 18.) On March 7, 2024, Bloomfield did so. (ECF No. 23.) On June 4, 2024, Bloomfield amended her Complaint in response to ESI's first Motion to Dismiss (ECF No. 39), and the next day, the Court denied ESI's first Motion to Dismiss as moot. (ECF No. 40.) On June 17, 2024, ESI filed the Motion now presented for decision.[4] (ECF No. 41.) Briefing has concluded, and the Court proceeds to consider the Motion now at bar.

## II.  STANDARD

ESI's Motion to Dismiss invokes Rule 12(b)(6) and argues that Bloomfield fails to state a claim for relief. This posture requires the Court to "assume[] the truth" of Bloomfield's "'well-pleaded factual allegations' and 'reasonable inference[s] therefrom.'" *Nat'l Rifle Ass'n v. Vullo*,

---

[3]   This order was signed by Senior Judge T.S. Ellis, III, to whom this matter was originally assigned. On January 18, 2024, Chief Judge Mark S. Davis transferred this case to the undersigned. (ECF No. 19.)

[4]   On its initial review of the case, the Court found it unclear why Bloomfield filed a lawsuit between two Idaho residents in the Eastern District of Virginia. Accordingly, on July 15, 2024, the Court directed the parties to address why this case should not be transferred to the District of Idaho pursuant to 28 U.S.C. § 1404. (ECF No. 44); *see Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986) (remarking that a "district court may consider a [?] transfer *sua sponte*" if the parties receive "an opportunity to be heard before a decision is rendered."). On July 19, 2024, the parties stipulated to venue in this District. (ECF No. 45.) Because "all parties have consented" to this forum, both "the convenience of parties" and "the interest of justice" favor retaining the case here. 28 U.S.C. § 1404(a); *see also Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006) (describing venue as "largely a matter of litigational convenience").

4

602 U.S. 175, 181 (2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Legal conclusions merit no such deferential treatment. *Iqbal*, 556 U.S. at 678. After construing the pleadings in this way, what remains of Bloomfield's pleadings must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Where, as here, a complaint alleges fraud, a heightened pleading standard applies. Fed. R. Civ. P. 9(b). *Iqbal* and its progeny interpret Federal Rule of Civil Procedure 8(a)(2), which requires pleadings to "contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677–78 (quoting the rule). However, a party "alleging fraud" must also "state with particularity" the circumstances of the fraud that she pleads. Fed. R. Civ. P. 9(b). "[B]ecause False Claims Act claims are fraud claims," Rule 9(b)'s "higher standard" applies. *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 194 (4th Cir. 2022).

Rule 9(b) requires Bloomfield to plead the "who, what, when, where, and how" of fraud. *Nicholson*, 42 F.4th at 195. A relator can do this "either by alleging a representative example describing 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby'; or by alleging a 'pattern of conduct that would necessarily have led to submission of false claims.'" *Id.* at 194 (quoting *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 197 (4th Cir. 2018)). Unless a relator can show at the pleading stage that she "has substantial prediscovery evidence" of "the particular circumstances" constituting fraud, Rule 9(b) requires dismissal. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Were it otherwise, Rule 9(b) would fail to "provide defendants with fair notice of claims against them and the

factual ground upon which they are based." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013).

## III. ANALYSIS

### A. Bloomfield's Claims

Count 1 of the FAC arises under 31 U.S.C. § 3729(a)(1)(A), which penalizes any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." Relator alleges that that ESI violated this provision by submitting and certifying a falsified total of full-time equivalent employees on ESI's payroll and falsely stating that the loan was economically necessary to keep ESI's operations going. (FAC ¶¶ 2, 60.) Count 2 arises under 31 U.S.C. § 3729(a)(1)(B) and is closely related to Count 1. This provision imposes liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Relator alleges that the same conduct underlying Count 1 gives rise to Count 2. (FAC ¶¶ 2, 60.) Count 3 alleges a "reverse false claim" theory under 31 U.S.C. § 3729(a)(1)(G), which imposes liability when a person

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

Relator alleges that ESI violated this provision when they falsely certified on their loan forgiveness application that all loan proceeds were put towards payroll costs. (FAC ¶ 2.)

### B. ESI's Motion to Dismiss

ESI raises four arguments in support of its Motion to Dismiss. (Def.'s Mem. Supp. Mot. Dismiss ("Mot.") ECF No. 41-1.) ESI asserts two arguments as to why Count 1 fails: first, because Relator does not sufficiently allege that the reported employee count on ESI's PPP loan application proved false; and second, that Relator failed to show that ESI's economic necessity

6

certification constituted an objective falsity. (Mot. at 9–17.) Third, ESI argues that Count 2 similarly fails because Relator alleged no false claim and therefore failed to plead a prima facie case. (Mot. at 18.) Fourth, and finally, ESI asserts that Count 3 fails because Relator improperly alleges that the same conduct underlying Counts 1 and 2 is what gives rise to Count 3.[5] (Mot. at 18–19.)

The Court finds that all four of ESI's arguments in support of dismissal lack merit. The Court takes up all three Counts in one analysis, and ultimately finds that Relator adequately pleads causes of action under 31 U.S.C. 3729(a)(1)(A), (B) and (G).

### C. Plaintiff Adequately Pleads Causes of Action under 31 U.S.C. § 3729(a)(1)(A), (B), and (G).

#### 1. Legal Standard

To prevail on a claim under 31 U.S.C. § 3729(a)(1)(A), (B), and (G), a relator must "allege four elements: (1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due." *United States ex rel. Taylor v. Boyko*,

---

[5] As an initial matter, the Court rejects ESI's argument that Relator's amended complaint alleges that the same conduct forms the basis of all three Counts. Instead, Relator alleges that the conduct underlying § 3729(a)(1)(A) and (B) refers to ESI's PPP loan application, while the alleged conduct underlying § 3729(a)(1)(G) refers to ESI seeking forgiveness for that loan. (Mot. at 20.) The Court finds that these are distinct. Indeed, the CARES Act even provides different sections for the loan application process (Section 1102) and the loan forgiveness process (Section 1106). *See also United States ex rel. Berkley v. Ocean State,* LLC, 2023 WL 3203641, at *7 (D.R.I. May 2, 2023) (distinguishing between applying for the PPP loan and seeking forgiveness for purposes of 31 U.S.C. § 3729(a)(1)(A), (B) and (G)).

7

39 F.4th 177, 188 (4th Cir. 2022) (cleaned up).[6] "Failure to adequately allege any of these elements dooms a claim." *Id.* (internal citation omitted).

### a. Falsity

The first of these elements, falsity, "encompasses . . . fraudulent misrepresentations, which include certain misleading omissions," and it incorporates "the common-law meaning of fraud." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 186–87 (2016). The FCA does not require literal falsity; rather, "half-truths — representations that state the truth only so far as it goes, while omitting critical qualifying information — can be actionable misrepresentations" under the Act. *Id.* at 188. As the Supreme Court explained in *Escobar*, a "seller who reveals that there may be two new roads near a property he is selling, but fails to disclose that a third potential road might bisect the property," makes a "'tacit representation'" that the third road did not exist, resulting in "an actionable half-truth." *Id.* at 188–89 (quoting *Junius Constr. Co. v. Cohen*, 178 N.E. 672, 674 (N.Y. 1931)).

Relator alleges that ESI presented "materially false or fraudulent claims for PPP loan[s]" (FAC ¶ 72) by manipulating its employment figures to gerrymander itself into the SBA's eligibility and loan forgiveness requirements and by falsely certifying that the loan was an economic necessity. The Court finds that Relator pleaded sufficient particular facts that, when assumed true, lead to the reasonable conclusion that ESI made false statements to obtain a PPP loan and subsequent loan forgiveness. For Counts 1 and 2, these facts include: (1) Confidential Witness Three's statement that they had listed in bidding contracts that ESI had "employee

---

[6] As *Taylor* acknowledged, the Fourth Circuit has in recent years debated whether a relator must plead the element, "presentment," "when alleging a § 3729(a)(1)(B) violation." 39 F.4th at 195 n.12. Because ESI does not dispute that it presented a claim to the Government when it submitted its PPP loan application to the SBA, this Court, like the Fourth Circuit in *Taylor*, "need not wade into this debate today." *Id.*

8

numbers well over 500 since at least 2018" (FAC ¶ 57); (2) ESI's listing of its total employee numbers on its website (FAC ¶ 54); and (3) Confidential Witness 1's statement that shortly before ESI laid off employees, ESI executives stated at a company-wide meeting that ESI was doing "great" and even had a back log of work to complete. (FAC ¶ 64.) For Count 3, these facts include ESI allegedly misappropriating PPP loan funds to purchase a private jet and then certifying on their loan forgiveness application that all loan proceeds were used towards payroll expenses. (FAC ¶ 67.)

Despite ESI's contentions that (1) any decrease in their workforce did not impact their average employee totals submitted as part of their PPP loan application (Mot. at 11), (2) Relator presents no evidence that ESI's economic necessity certification was objectively false (Mot. at 14), and (3) that they did not misappropriate funds to purchase a private jet (Mot. at 16), these issues constitute factual disputes inappropriate for resolution on a motion to dismiss. *See Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*, 995 F. Supp. 2d 512, 515 (E.D. Va. 2014) ("[B]ecause a 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court 'must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'"). As a result, Relator adequately pleaded the element of falsity.

### b. Requisite Scienter

The FCA's "scienter requirement defines 'knowing' and 'knowingly' to mean that a person has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the information.' *Universal Health Servs.*, 579 U.S. at 182 (internal citation omitted). "Actual knowledge. . . . refers to whether a person is aware of information." *United States ex rel. Schutte v. SuperValu*

9

*Inc.*, 598 U.S. 739, 751 (2023). The term "deliberate ignorance. . . . encompasses defendants who are aware of a substantial risk that their statements are false, but intentionally avoid taking steps to confirm the statement's truth or falsity." *Id.* And "reckless disregard. . . . captures defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." *Id.* The "FCA's scienter element refers to the defendant's knowledge and subjective beliefs, not what an objectively reasonable person might have known or believed." *Id.*

Relator alleges that ESI knowingly falsified their number of full-time equivalent employees and then knowingly stated falsely that the loan was economically necessary. (FAC ¶ 2.) Relator further alleges that ESI then knowingly retained the money by receiving loan forgiveness. (FAC ¶ 2.) The Court finds that Relator pleaded sufficient particular facts that, when assumed true, lead to the reasonable conclusion that ESI acted knowingly. For Counts 1 and 2, these facts include: (1) Relator's allegation that ESI decreased their workforce to 490 just before applying for a PPP loan to appear as though they met the 500-employee limit for a PPP loan (FAC ¶ 44), but then immediately began rehiring for these positions (FAC ¶ 46); and (2) ESI certifying that the loan was economically necessary despite touting to all employees that ESI was "winning a bunch of jobs" and overall doing very well (FAC ¶ 65). For Count 3, these facts include Relator's assertion that ESI falsely stated in their loan forgiveness application that all loan proceeds were used towards acceptable expenses, despite knowing that that loan proceeds were instead put towards the purchase of a private jet. (FAC ¶¶ 67.) As a result, Relator adequately pleaded that ESI had knowledge of their alleged falsities.

### c. Materiality

Further, the FCA "defines 'material' to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Universal Health Servs.*, 579 U.S. at 182 (internal citation omitted). Materiality "must be pleaded with particularity." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 190 (4th Cir. 2022). "To plead with particularity the materiality element of a False Claims Act (FCA) claim, the relator's complaint must contain specific facts regarding how the fraudulent conduct or false statement influenced the government's decision to pay." *Id.*

Relator alleges that ESI's false statements, first, caused the Government to pay ESI money in the form of a PPP loan (FAC ¶ 73) and, second, caused the government to forgive the loan. (*Id.* ¶¶ 67, 82). ESI disagrees, arguing that Relator fails to properly allege any underlying false claims, effectively rendering a materiality inquiry unnecessary. But, as stated above, Relator has sufficiently pleaded enough facts that, if assumed true, reasonably allege that ESI knowingly made false statements. Further, Defendant does not dispute that ESI received a PPP loan that the Government later forgave. (Mem. at 7.) As a result, because Defendant's arguments regarding falsity did not prevail and they present no cognizable argument as to materiality, the Court finds that the alleged false statements were material because they "influence[d]. . . . the payment or receipt of money or property." *Universal Health Servs.*, 579 U.S. at 182 (internal citation omitted).

### d. Caused the Government to Pay Out Money or to Forfeit Moneys Due

The fourth and final element of an FCA claim requires a Relator to allege facts demonstrating that the defendant's behavior "caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." *Boyko*, 39 F.4th at 188. Defendant does not

11

contest this issue; as stated above, ESI received a PPP loan, paid out by the Government, that it later forgave. (Mem. at 7.) As a result, Defendant's PPP loan and subsequent loan forgiveness applications clearly involved a "claim." *Boyko*, 39 F.4th at 188. Therefore, the Court finds that this fourth element is sufficiently pleaded.

## IV. CONCLUSION

For the reasons set forth above, the Court will DENY Defendant ESI's Motion to Dismiss (ECF No. 41).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Alexandria, Virginia
Date: October 29, 2024