IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

KAREN BLOOMFIELD,
    Plaintiff-Relator,

    v.
                                  Civil No. 1:22cv789 (DJN)

ENGINEERED STRUCTURES, INC.,
    Defendant.

**MEMORANDUM OPINION**

Plaintiff-Relator Karen Bloomfield ("Relator") alleges violations of the False Claims Act

("FCA") related to Defendant Engineered Structures Inc.'s ("Defendant") receipt of a Payment

Protection Plan ("PPP") loan from the Small Business Administration ("SBA") during the

COVID-19 pandemic in 2020. Throughout this litigation, the parties have disagreed on a

question of law integral to Relator's claims: whether businesses applying for PPP loans on the

basis that they employed no more than 500 people needed to include temporary workers obtained

from staffing agencies in their employee headcount. Having ordered and received supplemental

briefing on this issue, the Court now writes to address this question of first impression. For the

reasons set forth below, the Court finds that temporary workers from staffing agencies fall within

the definition of "employees" for PPP-eligibility purposes, including for businesses applying

under the PPP's 500-employee path. Such workers must be included in PPP-related headcount

calculations within the parameters set forth under 13 C.F.R. § 121.106.

## I.    BACKGROUND

The PPP arose out of the March 2020 Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 ("CARES Act"), which sought to "ameliorate the economic effects of the COVID-19 pandemic" by helping employers keep employees on their payroll, rather than lay them off.[1] *Meduri Farms, Inc. v. U.S. Small Bus. Admin.*, No. 3:24-CV-01431-IM, 2025 WL 2621970, at *2 (D. Or. Sept. 11, 2025). The CARES Act established the Paycheck Protection Program by amending Section 7(a) of the Small Business Act. CARES Act, § 1102(a), 134 Stat. at 286; *see also* 15 U.S.C. § 636(a)(36)(B) (providing that the SBA may guarantee PPP loans "under the same terms, conditions, and processes as a loan made under [Section 7(a)]"). Businesses seeking a loan under the PPP had to satisfy certain eligibility criteria and certify in good faith "that the uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations of the eligible recipient." 15 U.S.C. § 636(a)(36)(D)(i), (a)(36)(G)(i)(I). Section 1106 of the CARES Act permits businesses with PPP loans to apply for loan forgiveness "equal to the sum of" payroll, mortgage interest, rent and utility expenses paid during the period of the loan. CARES Act § 1106(b), 134 Stat. at 298 (codified as amended at 15 U.S.C. § 636m(b)).[2] The SBA ended the PPP on May 31, 2021. *Paycheck Protection Program*, U.S. SMALL BUS. ADMIN., https://www.sba.gov/funding-programs/loans/covid-19-relief-

---

[1]    Congress titled Title I of Division A of the CARES Act "Keeping American Workers Paid and Employed." Pub. L. No. 116-136, 134 Stat. 281.

[2]    If a business cut its workforce or reduced its employees' salaries or wages, the amount of forgiveness would be proportionally reduced. CARES Act § 1106(d), 134 Stat. at 298–99 (codified as amended at 15 U.S.C. § 636m(d)(2)–(3)).

options/paycheck-protection-program (last visited October 19, 2025) [https://perma.cc/U2AN-KLVF].

In this FCA case, Relator accuses Defendant, her former employer, of "knowing and reckless submission of false and fraudulent claims in connection with the [PPP]."[3] (ECF No. 39 ("First Amended Complaint" or "FAC") at 1.)[4] Relator centrally alleges that, while applying for a PPP loan, Defendant falsely certified that (1) it fell within the PPP's size limits for businesses and (2) its PPP loan request was necessary to support its ongoing operations due to the uncertainty of then-current economic conditions. (*Id.* ¶¶ 45, 51, 60–64.)

Following the filing of Relator's First Amended Complaint, Defendant filed a motion to dismiss the FAC, (ECF No. 41), which the Court denied in full. (ECF No. 47.) The parties subsequently filed *Daubert* motions and cross-motions for summary judgment. (ECF Nos. 73, 76, 90, 93.) The Court granted in part and denied in part the parties' *Daubert* motions and denied both summary judgment motions. (ECF Nos. 110, 111.)

Throughout this litigation, the parties have expressed conflicting positions on the interaction between various statutory provisions and SBA regulations and the impact, if any, that these interactions have on the merits of Relator's legal claims. Specifically, the parties disagree about the applicability of 13 C.F.R. § 121.106, an SBA regulation that predates the passage of the CARES Act, to 15 U.S.C. § 636(a)(36)(D)(i) and (v), the statutory provisions setting forth PPP-loan eligibility requirements.

---

[3]    The United States of America (the "Government") elected not to intervene in this case pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(4)(B). (ECF No. 17 at 1.) Relator maintains this action in the name of the Government pursuant to Section 3730(b)(1) of the FCA.

[4]    The Court employs the pagination assigned to the parties' various filings by the CM/ECF system.

As set forth in the CARES Act and codified at 15 U.S.C. § 636(a)(36)(D)(i), Congress established the following parameters for PPP-loan eligibility:

> [A]ny business concern . . . shall be eligible to receive a [PPP] loan if the business concern . . . employs not more than the greater of—
> **(I)**   500 employees; or
> **(II)**  if applicable, the size standard in number of employees established by the [SBA] for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.

15 U.S.C. § 636(a)(36)(D)(i).  Subclause (I) creates what the Court will refer to as the "500-employee path" to eligibility.  This path constitutes a novel element of the CARES Act, expanding eligibility for PPP loans beyond the pool of small businesses that qualify under the preexisting SBA rules referenced in subclause (II).

Later within the same subsection, Congress elaborated on the definition of "employee" in the context of the 500-employee path as follows:

> For purposes of determining whether a business concern . . . employs not more than 500 employees under clause (i)(I) . . . the term "employee" includes individuals employed on a full-time, part-time, or other basis.

15 U.S.C. § 636(a)(36)(D)(v).

Finally, 13 C.F.R. § 121.106, a preexisting regulation entitled "How does SBA calculate number of employees?" specifies the criteria of what constitutes an "employee" for SBA loan purposes, including, as relevant to the instant case, the following provisions:

> (a)   In determining a concern's number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis.  This includes employees obtained from a temporary employee agency, professional employee organization or leasing concern.  SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern. . . .
> (b)   Where the size standard is number of employees, the method for determining a concern's size includes the following principles:
> [ . . . ]

> (2)  Part-time and temporary employees are counted the same as full-time employees.

13 C.F.R. § 121.106.

The parties have also drawn attention to guidance documents issued by the United States Department of the Treasury and the SBA in the wake of the CARES Act's passage, including Final Interim Rules ("FIRs") and FAQ documents seeking to clarify issues surrounding PPP eligibility. In particular, Relator points to a document released by the Treasury Department as early as March 31, 2020, entitled "Paycheck Protection Program (PPP) Information Sheet: Borrowers." (ECF No. 118-7 ("Information Sheet").) In a section titled "Who can apply," this Information Sheet includes a hyperlink to the SBA Size Standards webpage for readers seeking "additional detail." (*Id.* at 2.) The SBA Size Standards page, in turn, specifies that "SBA calculates the number of employees in accordance with 13 CFR 121.106" and includes a hyperlink to that regulation. *Size standards*, Small Bus. Admin., https://www.sba.gov/federal-contracting/contracting-guide/size-standards (last visited Oct. 14, 2025) [https://perma.cc/Y7GS-E4K3].

On October 1, 2025, the Court ordered supplemental briefing addressing three legal issues related to these provisions that require resolution for purposes of the Court's jury instructions:

> 1.  Whether 13 C.F.R. § 121.106(a) applies to businesses that applied for PPP loans on the basis that they had 500 or fewer employees in the relevant time period;
> 2.  Whether temporary workers hired through staffing agencies must be counted among those 500 or fewer employees for PPP-eligibility purposes, regardless of 13 C.F.R. § 121.106(a)'s applicability; and
> 3.  What constitutes the proper timeframe for calculating a business's number of employees for PPP-eligibility purposes.

(ECF No. 114 at 1.)  The parties submitted briefs addressing these three questions.  (ECF Nos. 118, 123, 131.)  The United States of America (the "Government"), on the SBA's behalf, filed a statement of interest, which it later supplemented.  (ECF Nos. 116, 126.)  The parties agree as to the proper timeframe under Question 3:  businesses applying for PPP loans in early 2020 could calculate their headcount for purposes of PPP eligibility based on their average number of employees during the preceding twelve months or during calendar year 2019.  (*See* ECF No. 124-13 at 5–6 (PPP Loan FAQ document, issued April 6, 2020, setting forth the relevant guidance at Question 14).)  However, as in their previous filings, the parties disagree as to Questions 1 and 2, necessitating resolution by the Court.

## II.    ANALYSIS

Given the interrelated nature of Questions 1 and 2, the Court proceeds to analyze the parties' responses to these questions together.  It begins by summarizing the parties' differing positions before proceeding with its analysis of the questions presented.

### A.    Parties' Positions

Defendant asserts that 13 C.F.R. § 121.106(a) does not apply to businesses applying for PPP loans under the 500-employee path, and that temporary workers hired through staffing agencies should not be counted for PPP-eligibility purposes under any circumstance.  Defendant's argument rests on the existence of 15 U.S.C. § 636(a)(36)(D)(v), the statutory provision in the CARES Act that defines "employee" for purposes of the 500-employee path.  Defendant argues that this provision's definition "explicitly diverged" from the SBA's existing definition of "employee" in § 121.106(a) and therefore supersedes the preexisting regulation, rendering § 121.106(a) "facially inapplicable" to the 500-employee path.  (ECF No. 123 ("Def. Brief") at 6, 12, 16.)  While acknowledging that § 636(a)(36)(D)(v) does not address whether

persons employed on an "other basis" include temporary workers from staffing agencies, Defendant maintains that this lack of clarity fails to render the provision ambiguous, since the statutory language purportedly demonstrates "intent for the common law definition of employee to apply." (*Id.* at 6, 14.) Given that this common law definition does not include temporary workers from staffing agencies, such workers need not be counted under the 500-employee path. (*See id.* at 24 (defining common law employees as "individuals for whom the employer pays wages and withholds taxes").) In the alternative, Defendant argues that, even if the Court found Congress's definition at § 636(a)(36)(D)(v) to be ambiguous, the legislative history resolves that ambiguity in favor of excluding including temp agency workers from PPP-related headcount calculations. (*Id.* at 7.) Defendant highlights statements by several legislators involved in drafting the CARES Act, which emphasize the need to both expand eligibility for government loans in the wake of the COVID-19 pandemic and to provide these funds expeditiously. (*Id.* at 7, 21–23.) Reading the statute to include temporary workers would cut against those legislative goals, since the effort required to ensure that temporary workers would not be double-counted by their employers and their temp agencies "would have led to significant delays in the disbursement of PPP loans." (*Id.* at 7.) Pursuant to the legislators' statements, Congressional intent thus counsels that any ambiguity in § 636(a)(36)(D)(v) should be resolved in favor of excluding such workers.

As to whether temporary workers should count as employees for PPP-loan eligibility purposes irrespective of § 121.106(a)'s applicability, Defendant argues against inclusion along similar lines. Defendant asserts that such employees should be counted as employees of their temp agencies, who serve as their common law employers, not the employers to whom they are loaned out. (*Id.* at 32.) In support of its position, Defendant again invokes the "significant

administrative and regulatory hurdle" that a contrary reading would impose on employers trying to quickly obtain necessary aid in the face of a global health crisis. (*Id.* at 33.)

Relator disagrees with Defendant across the board. In Relator's telling, § 121.106(a) applies with full force to all PPP loan applicants, including those applying under the 500-employee path. In support, Relator cites the text of the statutory and regulatory provisions governing SBA Section 7(a) loans, the CARES Act, the SBA's stated interpretation of the statute and the broad consensus among practitioners in the field concerning § 121.106(a)'s applicability to PPP applicants. (ECF No. 118 ("Rel. Brief") at 8, 13–17, 21–25.) As to the former point, Relator emphasizes that the CARES Act's PPP provisions constituted amendments to Section 7(a) of the Small Business Act, and that, barring any conflicts, these provisions were subject to the existing conditions and regulations that applied to Section 7(a) loans, including § 121.106(a). (*Id.* at 13–14.) Relator also cites several recent court cases, including *Meduri Farms, Inc. v. United States Small Business Administration*, 2025 WL 2621970 (D. Or. Sept. 11, 2025), where courts have specifically recognized § 121.106(a)'s applicability to the PPP and its follow-on programs. (*Id.* at 9.) Responding to Defendant's argument that the CARES Act's definition of "employee" at § 636(a)(36)(A)(D)(v) constitutes a "divergence" from the existing definition at § 121.106(a), Relator highlights that the CARES Act's definition uses the exact same language as § 121.106(a). (ECF No. 131 ("Rel. Reply") at 9.) Thus, Relator suggests, § 636(a)(36)(A)(D)(v) ought to be characterized not as a "divergence," but rather, as a "direct adoption and confirmation" of § 121.106(a) and its applicability to PPP loans. (*Id.*)

Relator proceeds to argue that, even if § 121.106(a) did not directly apply to the 500-employee path, the inclusion of individuals employed on an "other basis" in the CARES Act's definition of "employee" mandates counting temporary workers from staffing agencies, since

such workers "unquestionably" constitute "employees on an 'other basis.'" (Rel. Brief at 10 (quoting § 636(a)(36)(A)(D)(v)).) Relator finds support for this interpretation in SBA's Size Policy Statement No. 1, promulgated in 1986, which emphasizes SBA's concerns about businesses attempting to appear "small" by using temp agency labor, rather than employ their own workers, and which underscores SBA's commitment "not [to] condone [such] employment practices." (*Id.* at 27 (quoting 51 Fed. Reg. 6100 (Feb. 20, 1986)).)

The SBA agrees with Relator's position. In its statement of interest on the SBA's behalf, the Government submits that § 121.106(a) "applied to loan eligibility including how the number of employees is to be determined." (ECF No. 116 at 1.) As to Question 2, the Government merely cites "SBA PPP Guidance" setting forth that, for purposes of the 500-employee path, employers must include individuals employed on a "full-time, part-time, or other basis," without further elaboration. (*Id.* at 2 (citing Paycheck Protection Program Loans, Frequently Asked Questions (FAQs), As of April 26, 2020 (Question 36)).)

**B.    Court's Analysis**

Having reviewed the parties' briefs, as well as the relevant statutes, regulations and case law, the Court finds that § 121.106(a) applies with full force to the PPP loan program's 500-employee path. As explained more fully below, the statutory and regulatory framework clearly establish that, unless "otherwise provided" for in the CARES Act, § 121.106(a) governs PPP eligibility. 15 U.S.C. § 636(a)(36)(B). The CARES Act's definition of "employee" for purposes of the 500-employee path, which restates verbatim a portion of § 121.106(a), does not "otherwise provide," since it employs identical language to that used in the SBA regulation. Thus, given the lack of any conflict between the two provisions, and given the governing statutory and regulatory framework under Section 7(a), § 121.106(a) applies to the 500-employee path.

9

Even assuming *arguendo* that the CARES Act's definition of "employee" superseded § 121.106(a) for purposes of the 500-employee path, the Court finds that temporary workers would still require counting for purposes of PPP eligibility. The CARES Act's definition expressly includes persons employed on an "other basis," an ambiguous term that the statute fails to define. The Court resolves that ambiguity by looking to the statutory and regulatory framework, which clarifies, in § 121.106(a), that "other" employees "include[] employees obtained from a temporary employee agency, professional employee organization or leasing concern." Therefore, under either approach, the Court finds that businesses must include temporary employees from staffing agencies in their headcount calculations under the 500-employee path to the extent required by § 121.106(a).

1.    **13 C.F.R. § 121.106(a)'s applicability to the PPP loan program's 500-employee path**

The Court begins by finding that, as a general matter, § 121.106(a) applies to the PPP. As already discussed, Congress created the PPP as an amendment to Section 7(a) of the SBA, subject to the "same terms, conditions, and processes as a loan made under" that section, unless "otherwise provided." 15 U.S.C. § 636(a)(36)(B). Thus, barring any provisions explicitly to the contrary, the PPP stood subject to the existing regulatory framework governing Section 7(a). *See Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217, 227 (2d Cir. 2021) ("The PPP was not created as a standalone program but was added into the existing § 7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority.") (quoting *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1256 (11th Cir. 2020)). Since § 121.106(a) constitutes part of that regulatory framework, it applies, as a general matter, to the PPP. *See Meduri Farms*, 2025 WL 2621970 at *4 (referring to § 121.106 as a "Section 7(a) implementing regulation").

The Court's inquiry thus proceeds to consider whether there exists a basis to find that § 121.106(a) fails to apply to the 500-employee path criteria *in particular*. Defendant's argument assumes such a finding and relies centrally on the existence of 15 U.S.C. § 636(a)(36)(A)(D)(v) for support. There, Congress clarified that the term "employee," in the context of the 500-employee path, "includes individuals employed on a full-time, part-time, or other basis." 15 U.S.C. § 636(a)(36)(A)(D)(v). Defendant argues that the § 636(a)(36)(A)(D)(v) definition, and the "new size eligibility" criteria more broadly, constituted a "key area in which [the CARES Act] deviated from the existing [Section] 7(a) requirements," and that, therefore, applying the existing § 121.106(a) regulation to the 500-employee path "would be like fitting a square peg in a round hole." (Def. Brief at 12–13.) More specifically, Defendant asserts that the existence of this definition, which it characterizes as Congress "legislat[ing] anew," renders § 121.106(a) "facially inapplicable" to the 500-employee path. (*Id.* at 16.) Defendant also invokes the canon against surplusage, arguing that if Congress had intended § 121.106(a) to apply to the 500-employee path, it would not have included another definitional provision at § 636(a)(36)(A)(D)(v), since it "could have remained silent" and achieved the same effect. (*Id.* at 17.) Congress's choice *not* to remain silent, by contrast, necessarily implies, in Defendant's telling, that the CARES Act's definition of "employee" "explicitly diverg[es] from the existing regulatory formula for counting employees" and thus renders § 121.106(a) inapplicable. (*Id.* at 18.) Finally, Defendant cites the fact that Congress's new definition "incorporate[es] some of the same language [as § 121.106(a)] . . . while leaving out other language found in the regulation" as further proof of Congress's intent to provide a new framework for counting

11

employees under the 500-employee path, with different criteria than those set forth at § 121.106(a). (*Id.* at 19–20.) [5]

Defendant's arguments against § 121.106(a)'s applicability fail to persuade the Court, for two main reasons. First, Defendant's argument is centrally premised on a perceived conflict between the language in § 636(a)(36)(A)(D)(v) and § 121.106(a). But no such conflict exists. Both provisions state, *using the exact same words*, that individuals "employed on a full-time, part-time, or other basis" constitute employees for purposes of loan eligibility. Defendant's conclusory assertions that the CARES Act "legislates anew" and "deviate[s]" on the issue of who qualifies as an employee for purposes of the 500-employee path, and that the statute's definition "explicitly diverg[es]" from the existing regulatory framework, are unfounded and fail to comport with the statutory and regulatory text.

Defendant's other arguments concerning Congress's purported intent to "explicitly diverge" from § 121.106(a) for purposes of the 500-employee path also lack merit. To the extent that Defendant seeks to rest this argument on textual evidence, its assertion fails for the same reasons discussed above. Congress's decision to reuse *the same exact formulation* that SBA used in § 121.106(a) hardly evinces an intent to "explicitly diverge." Nor does any other provision of the CARES Act demonstrate such intent to "diverge" on the question of which employees should be counted for purposes of loan eligibility. While the Court agrees with

---

[5]     Defendant's position stands at odds with its previous acknowledgment, in a letter to the Department of Justice ("DOJ"), that § 121.106 applies with full force to the 500-employee path. *See* ECF No. 118-1 at 3 (December 2, 2022 letter from Defendant's counsel to DOJ representing that Defendant "utilized the applicable standard of 500 or fewer employees" and "applied the SBA's definition in 13 C.F.R. § 121.106 to include all individuals employed on a full-time, part-time, or other basis and counting part-time and temporary employees the same as full-time employees." (internal quotations omitted)). Despite briefing this issue extensively in the present litigation, Defendant has yet to explain its significant change of heart on this issue.

Defendant's general (and uncontested) assertion that Congress sought to expand eligibility for PPP loans relative to traditional SBA loans, Congress expressly manifested that intent by adding a new mode of eligibility under the 500-employee path, which enabled businesses that would otherwise not qualify as "small" for SBA purposes, and thus would not ordinarily be eligible for SBA loans, to qualify for the PPP. By contrast, nothing in the CARES Act's text evinces Congressional intent to achieve such an expansion by altering the way that employees are classified or counted. If anything, Congress's choice to reuse existing language from old SBA regulations — particularly in the face of explicit and express changes to other eligibility criteria — demonstrates a desire to keep things consistent and avoid confusion on the important threshold issue of how businesses should classify and count their employees. (*See* Def. Brief at 22 (citing the CARES Act's express changes to the 7(a) loan program, including waiving the "credit elsewhere," personal guarantee and processing fee requirements).)

Defendant's citations to statements by legislators involved in the drafting of the CARES Act fail to meaningfully alter this picture. The Court notes Justice Scalia's wise admonition against ascribing weight to statements by legislators that stand unsupported or contradicted by statutory text. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 528 (1989) (Scalia, J., concurring) ("The meaning of terms on the statute books ought to be determined, not on the basis of which meaning can be shown to have been understood by a larger handful of the Members of Congress; but rather on the basis of which meaning is (1) most in accord with context and ordinary usage . . . and (2) most compatible with the surrounding body of law into which the provision must be integrated. . . ."); *see also Brock v. Pierce County*, 476 U.S. 253, 263 (1986) (Marshall, J.) (holding that statements by individual legislators should not be given controlling effect); *United States v. Charleston Cnty. Sch. Dist.*, 960 F.2d 1227, 1233 (4th Cir. 1992)

13

("[R]eliance upon legislators' statements . . . in divining the intent of a legislative body is a step to be taken cautiously and the statements of individual legislators should not be given controlling effect.")  Moreover, while these statements by legislators speak to Congress's general intent to quickly address the unprecedented economic emergency created by the COVID-19 pandemic,[6] as well as a more particularized intent to expand eligibility for such emergency aid beyond SBA's traditional criteria, nothing in these statements speaks, in any way, to an intent to modify or otherwise undermine the SBA's existing criteria for classifying and counting employees. Defendant's arguments based on these statements thus fail entirely to manifest Congressional intent to "explicitly diverge" from § 121.106(a)'s employee counting mechanisms.

Defendant's technical arguments concerning (1) the omission of text that appears in § 121.106(a) but not in § 636(a)(36)(A)(D)(v) and (2) the canon against surplusage do not meaningfully alter the Court's view.  Defendant makes much of the fact that, while § 636(a)(36)(A)(D)(v) reuses sections of § 121.106 verbatim, it does not include the latter's text in full.  Specifically, Congress did not include language from the regulation clarifying that full-time, part-time, or other employees "include[] employees obtained from a temporary employee agency, professional employee organization or leasing concern." (Def. Brief at 19–20.)  In Defendant's telling, this failure to reprint § 121.106 in full constituted "a deliberate choice . . . to provide a straight-forward method for counting employees to determine eligibility for the 500-employee path" that stands at odds with the mechanism provided in that regulation.  (*Id.*)

---

[6]    The Court notes a certain irony in Defendant's decision to quote then-Senator Marco Rubio's impassioned command for PPP funds to get "into the hands of small business so they can *keep the people who work for them employed*," given Relator's thus-far-uncontested allegation that Defendant responded to the potentially impending economic downturn in early 2020 not by drawing on existing credit lines or seeking other funds to keep paying its employees, but rather, by laying them off.  (Def. Brief at 23 (citing Exhibit C (166 Cong. Rec. at S1900)) (emphasis added); FAC at ¶¶ 44–45.)

Defendant also invokes the canon against surplusage to bolster its claims. (*Id.* at 18.)  To that end, Defendant reasons that Congress *must* have intended to sideline § 121.106(a) in its entirety when it decided to include an additional definition of "employee" at § 636(a)(36)(A)(D)(v), since any other interpretation of Congress's intent would render the latter provision redundant — something that Congress could not have intended under a strict application of that canon.  (*Id.*)

While the Court notes the technical correctness of Defendant's arguments, they fail to persuade, given the greater context at issue.  Regarding the narrow issue of how employees should be classified and counted for purposes of PPP loan eligibility under the 500-employee path, Congress did three things when it passed the CARES Act:  it (1) replicated, verbatim, part (but not all) of an existing regulatory provision into the statute; (2) expressly granted SBA the authority to administer PPP loans under the "same terms, conditions and processes" as its existing loan programs; and (3) remained silent as to any intent to alter that regulatory provision's meaning or scope.  Defendant's assertion that these acts and omissions by Congress demonstrate an affirmative intent to (1) sideline that regulatory provision and (2) replace it with a common law rule fails to account for the rushed legislative process that gave rise to the CARES Act.[7]  Further, it fails to acknowledge the well-known realities of Congressional drafting and its imperfections.[8]  It also fails to comport with common sense, which strongly favors a reading that Congress injected § 121.106's language into the CARES Act to *extend* that

---

[7]    As Defendant highlights in its own briefing, this highly complex legislation was pulled together "[o]ver the span of a few days."  (Def. Brief at 20.)

[8]    *See Sullivan v. Everhart*, 494 U.S. 83, 106 (1990) (Stevens, J., dissenting) (Emphasizing the Court's duty "to ask what Congress intended, and not to assay whether Congress might have stated that intent more naturally, more artfully, or more pithily"); *see also Torres v. Lynch*, 578 U.S. 452, 472 (2016) ("Rather than expecting . . .  perfection in drafting, we have routinely construed statutes to have a particular meaning even as we acknowledged that Congress could have expressed itself more clearly.").

regulation's applicability to the 500-employee path, but that it did so in an imprecise way. While

the Supreme Court cites the canon of surplusage as a useful tool of statutory interpretation,

particularly where a contrary interpretation of a newer provision renders an older provision

superfluous (unlike here, where the opposite is true), it also emphatically pronounced that this

canon is "not an absolute rule." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013). For all

of these reasons, the Court rejects Defendant's technical arguments as unpersuasive.

 In sum, the Court finds that no conflict exists between the method of classifying and

counting employees set forth in § 121.106(a) and Congress's definition of "employee" in

§ 636(a)(36)(A)(D)(v). In the absence of such a conflict, and in line with the statutory and

regulatory framework already in place, the Court finds that § 121.106(a) governs headcount

calculations for businesses applying for PPP loans under the 500-employee path.

   **2.** **Whether temporary workers from staffing agencies must be included in the 500-employee headcount limit if 13 C.F.R. § 121.106(a) does not directly apply to the 500-employee path**

 Even if the Court accepted Defendant's argument that § 636(a)(36)(A)(D)(v)'s definition

of "employee" superseded § 121.106(a) for purposes of the 500-employee path, the Court finds

that PPP applicants would still need to include temporary workers in their headcount application

under that definition. As discussed in detail below, § 636(a)(36)(A)(D)(v)'s definition of

"employee" is inherently ambiguous. Looking to the statutory and regulatory framework for

guidance, the Court resolves that ambiguity in favor of including temporary workers. To do so,

it need look only as far as the previously discussed SBA regulation, § 121.106(a), which clarifies

that "other" employees, for SBA purposes, "include[] employees obtained from a temporary

employee agency, professional employee organization or leasing concern." 13 C.F.R.

§ 121.106(a). Section 636(a)(36)(A)(D)(v) thus requires businesses seeking PPP loans under the

500-employee path to include temporary employees from staffing agencies in their headcount, regardless of whether § 121.106(a) directly applies to that path.

When construing the scope of a statutory provision, a court's first step "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "If the language is plain and the statutory scheme is coherent and consistent, we need not inquire further." *U.S. v. Photogrammetric Data Servs., Inc.*, 259 F.3d 229, 247 (4th Cir. 2001), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). The Supreme Court has found that, where a statutory term is, in fact, ambiguous, "[t]he broader context provided by other sections of the statute [may] provide[] considerable assistance" in resolving that ambiguity. *Robinson*, 519 U.S. at 345; *see King v. Burwell*, 576 U.S. 473, 492 (2015) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme. . . ."). If a government agency has interpreted the ambiguous statute at issue, "courts 'exercise their independent judgment' to determine the 'single, best meaning' [of the statute,] but do so 'with the agency's body of experience and informed judgment at their disposal.'" *Valladares v. Ray*, 130 F.4th 74, 83–84 (4th Cir. 2025) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 402, 412 (2024) (cleaned up)). The extent to which a court may look to an agency for guidance depends on a variety of factors, including "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Loper Bright*, 603 U.S. at 388.

Congress's definition of "employee" for purposes of the 500-employee path to PPP-loan eligibility specifies only that this term "includes individuals employed on a full-time, part-time, or other basis." 15 U.S.C. § 636(a)(36)(A)(D)(v). Neither that provision nor any other provision

17

in the CARES Act expounds on what constitutes employment on an "other basis," a phrase that appears nowhere else in the statute. Nor does any party represent that employment on an "other basis" possesses a fixed definition or constitutes a legal term of art, a finding similarly borne out by the Court's research. The Court therefore finds § 636(a)(36)(A)(D)(v) ambiguous as to its scope.

However, the Court need look no further than the statutory and regulatory structure of the CARES Act and Section 7(a) to resolve this ambiguity. As discussed above, the CARES Act expressly authorizes the SBA to administer PPP-related provisions "under the same terms, conditions, and processes as a loan made under this subsection," unless "otherwise provided in this paragraph." 15 U.S.C. § 636(a)(36)(B). And as already mentioned, no other provision in the CARES Act "otherwise provide[s]" a definition of "other basis." Thus, under the statutory scheme, the "terms, conditions, and processes" normally governing SBA loans remain applicable to this provision and stand available to the Court in resolving this ambiguity. 13 C.F.R. § 121.106(a), in turn, sets forth the "processes" for how SBA counts employees and thus stands incorporated into the CARES Act's statutory scheme under 15 U.S.C. § 636(a)(36)(B). That regulation expressly clarifies that employment on a full-time, part-time or other basis "includes employees obtained from a temporary employee agency, professional employee organization or leasing concern." 13 C.F.R. § 121.106(a). Thus, by looking to the "broader context provided by other sections of the statute," as Supreme Court precedent commands, the Court can successfully resolve the ambiguity in § 636(a)(36)(A)(D)(v), finding that this provision requires PPP applicants under the 500-employee path to include temporary workers obtained from staffing agencies in their calculation of persons employed on an "other basis" in accordance with 13 C.F.R. § 121.106(a). *Robinson*, 519 U.S. at 345.

18

The SBA's interpretation of the CARES Act supports the Court's conclusion. As set forth in the Government's statement of interest, the SBA agrees that "Section 121.106(a) applied to PPP loan eligibility including how the number of employees is to be determined." (ECF No. 116 at 1.) That statement also tracks the SBA's position in several recent court cases concerning issues surrounding PPP eligibility. *See, e.g., Meduri Farms*, 2025 WL 2621970, at *4 (discussing SBA position that "the statutory and regulatory framework governing PPP2 loans establishes that a business's number of employees is controlled by a preexisting regulation," namely 13 C.F.R. § 121.106.); *Gordon Coll. v. U.S. Small Bus. Admin.*, No. 1:23-cv-00614-BAH, ECF No. 39 at 12 (D.D.C. Mar. 18, 2025) (SBA brief explaining that in determining headcount for PPP eligibility purposes, it "adhered [to] its long-standing regulation that '[p]art-time and temporary employees are counted the same as full time employees.'") (quoting 13 C.F.R. § 121.106(b)(2).) While the Court did not rely on this guidance in arriving at its "independent judgment," the "thoroughness evident" in SBA's analysis — particularly in its aforementioned briefs in related cases — along with the "validity of its reasoning" and its "consistency" with its own pronouncements, all serve to fortify the Court's confidence in its own analysis. *Loper Bright*, 603 U.S. at 388.

Defendant proffers two arguments in opposition. First, Defendant asserts that § 636(a)(36)(A)(D)(v)'s definition contains no ambiguity whatsoever. Rather, using a somewhat perplexing chain of inferences, Defendant argues that Congress's definition in § 636(a)(36)(A)(D)(v) constitutes a "nominal" definition, due to its "circular" use of the term "individuals employed," and that therefore, the "common law understanding" of the term "employee" displaces any other possible definition (and thus any possible ambiguity) contained within the statutory text. (Def. Brief at 15.) By repeatedly asserting that § 636(a)(36)(A)(D)(v)

provides a "straight-forward" or "streamlined" method for counting employees, Defendant also appears to suggest, somewhat tautologically, that, because the proposed method is so "straight-forward," the statute cannot be ambiguous. (*Id.* at 20.) In the alternative, Defendant argues that, even if the Court found § 636(a)(36)(A)(D)(v)'s definition ambiguous, it should resolve that ambiguity in Defendant's favor, based on the same legislator statements discussed above that emphasize the need for PPP funds to reach an expanded pool of businesses relative to traditional SBA loans, and to do so quickly. (*Id.* at 20–23.) Since counting temporary workers would have imposed a "significant administrative and regulatory hurdle" on applicants, and since such a "hurdle" would run contrary to the need for speed that the legislators' statements emphasize, any ambiguity should thus be resolved in favor of excluding temporary workers from the headcount requirement. (*Id.* at 33.)

The Court finds both of Defendant's arguments to lack merit. The scope of § 636(a)(36)(A)(D)(v)'s definition of "employee," particularly as it relates to those employed on an "other basis," is facially ambiguous, as the Court already assessed. Defendant's argument that Congress unambiguously sought to impose the common law definition of "employee" through that provision relies on a string of attenuated inferences that lack legal and logical support. The same is true for Defendant's repeated assertions that § 636(a)(36)(A)(D)(v) is "straight-forward," a formulation derived from *Gordon College v. U.S. Small Bus. Admin.*, 2025 WL 1517208, at *7 (D.D.C. May 28, 2025). Defendant's repetitive citation of this phrase in the present context is profoundly misleading.[9] It is also conclusory and unhelpful, given the

---

[9]    In *Gordon College*, the court concerned itself with the manner of counting employees of different employment statuses, specifically considering whether a part-time employee should be counted only as a fraction of a full-time employee based on the number of hours worked. 2025 WL 1517208 at *3. On that question, the court closely examined the statute to conclude that § 636(a)(36)(A)(D)(v) indeed speaks straight-forwardly:  all employees count equally,

provision's facial ambiguity.  Finally, the Court has already discussed the limited probative value

of the legislator statements that Defendant cites.  In the face of textual evidence from within the

statutory and regulatory scheme that definitively resolves the ambiguity concerning the meaning

of employment on an "other basis," Defendant's citations fail to meaningfully affect the Court's

analysis.

Finally, the Court turns to Defendant's arguments concerning the purported negative

practical effects of finding that PPP applicants must include temporary workers in their

headcount.  Defendant cites the fact that many temp agencies applied for and received PPP loans,

and that these agencies apparently counted the workers that they were supplying to employers

(like Defendant) as their own employees.  (Def. Brief at 30, 34;) *see also The Small Biz Double-*

*Dip: Temp Companies Got Cheap Government Money, Got Paid by Clients for the Same*

*Workers*, PROPUBLICA (July 27, 2020), https://www.propublica.org/article/the-small-biz-double-

dip-temp-companies-got-cheap-government-money-got-paid-by-clients-for-the-same-workers

[https://perma.cc/F588-BPYQ] (describing "double dip" phenomenon, whereby temp agencies

receiving PPP loans were "getting paid twice for the same worker, once by the client and then

again by taxpayers.").  In Defendant's telling, this on-the-ground reality, paired with what

Defendant characterizes as the CARES Act's prohibition on double-counting employees, renders

the Court's proposed finding "incompatible with key provisions of the CARES Act" and not a

"logical" reading of the statute.  (Def. Brief at 33 (citing 15 U.S.C. § 636(a)(36)(G)(i)(IV)), 34.)

Defendant also warns that such a finding "would likely affect many other PPP loan recipients

---

"regardless of the employee's employment status or the number of hours they work." *Id.* at *7.
The *Gordon College* court concerned itself only with *how* to count employees clearly covered by
the statutory language (full-time and part-time employees), not with determining *who* should be
counted in the first place.  On that point, § 636(a)(36)(A)(D)(v) is anything but straight-forward,
as evidenced by the parties' protracted disagreement on this issue.

similarly situated to ESI" by pushing them over the 500-employee limit and rendering them ineligible for the PPP loans that they previously obtained. (*Id.* at 30 n.11.)

Defendant's policy concerns fail to justify its request that the Court ignore the text of the statutory and regulatory framework within which Congress created the PPP. That framework, as evidenced by § 121.106, and as reiterated by the SBA, expressly requires employers to include temporary workers in their employee headcount numbers for purposes of PPP loan eligibility. While the Court does not opine on the wisdom of this requirement, it notes the obvious negative incentives that a contrary framework would create: allowing employers to obtain below-market loans — guaranteed by American taxpayers — simply by firing full-time employees and replacing them with temporary workers from staffing agencies. *See* 51 Fed. Reg. 6099 (Feb. 20, 1986) (SBA Size Policy Statement No. 1, which recognizes that "merely appl[ying] the common law indicia of an employee/employer relationship, i.e., who hires, fires, pays and withholds taxes . . . creates a potential for firms to avoid the consequences of their true size by imaginative use of employment contractors" and flagging "the potential for subjecting SBA size determinations to abuse" under a contrary regime). As Relator credibly alleges, such temptations for abuse may have existed in this very case, underscoring the validity of the policy concerns manifested in § 121.106 and, by extension, in Section 7(a) and the PPP. (Rel. Brief at 27–29.) These policy concerns notwithstanding, the Court follows the text and the law, as it must, and refuses Defendant's invitation to take a contrary approach.

In sum, the Court finds that, even if § 121.106 did not directly apply to the 500-employee path, PPP applicants would still be required to include temporary workers in their employee head count in accordance with that regulation. Such workers include temp workers provided to employers by staffing agencies.

22

### III.    CONCLUSION

For the reasons set forth above, the Court finds that temporary workers obtained from staffing agencies fall within the definition of "employees" for PPP-eligibility purposes, including for businesses applying under the PPP's 500-employee path. Such workers must therefore be included in PPP-related headcount calculations within the parameters set forth under 13 C.F.R. § 121.106. For purposes of the instant litigation, Defendant's headcount calculations may be based on its average number of employees during the preceding twelve months or during calendar year 2019.

An appropriate order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Alexandria, Virginia
Date:  October 20, 2025