IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* KAREN BLOOMFIELD, | Civil Action No. 1:22-cv-00789-DJN-IDD |
| *Plaintiff-Relator*, | |
| v. | November 7, 2025 |
| ENGINEERED STRUCTURES, INC., | |
| *Defendant*. | |

**PLAINTIFF-RELATOR'S MEMORANDUM OF LAW IN SUPPORT OF CONSENTED TO MOTION FOR APPROVAL OF THE PARTIES' SETTLEMENT**

## **TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION………………………………………………………………………..1

II. BACKGROUND…………………………………………………………………………...2

    A. The Parties…………………………………………………………..…………..……2

    B. Relator's Legal Claims……………………………………………………………3

    C. Procedural History…………………………………………………………...…..4

III. ARGUMENT………………………………………………………………………….…6

    A. The Settlement Warrants Approval……………………………………………...…..6

    B. The Agreed-Upon Percentage Payable to Relator Should Be Approved………………………………………………………………………………8

    C. The Attorneys' Fees and Litigation Expenses Should Be Approved………………………………………………………………………….......10

IV. CONCLUSION…………………………………………………………………….......14

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*,
  28 F.4th 513 (4th Cir. 2022) .................................................................................................. 6, 7
*Almendarez v. J.T.T. Enters. Corp.*,
  2010 WL 3385362 (D. Md. Aug. 25, 2010) ................................................................................ 13
*Bd. of Trs., Shee Metal Workers' Nat. Pension Fund v. Four-C-Aire, Inc.*,
  No. 1:15CV105 LMB JFA, 2015 WL 3603804 (E.D. Va. June 5, 2015) ................................ 12
*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. Jan. 31, 2014) ....................................................................................... 11
*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) .......................................................................................... 11
*Compton v. North Central Virginia Restaurants, Inc.*,
  2022 WL 4008719 (W.D. Va. Sept. 2, 2022) .............................................................................. 7
*Deloach v. Philip Morris Co.*,
  2003 WL 23094907 (M.D.N.C. Dec. 19, 2003) ........................................................................ 13
*Flinn v. FMC Corp.*,
  528 F.2d 1169 (4th Cir. 1975) ...................................................................................................... 7
*Goldberg v. Marriott PLP Corp.*,
  33 F. Supp. 434 (D. Md. Oct. 22, 1990) .................................................................................... 13
*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...................................................................................................................... 11
*In re Lumber Liquidators*,
  952 F.3d ......................................................................................................................................... 7
*In re MedStar ERISA Litig.*,
  No. CV JKB-20-1984, 2024 WL 4110941 (D. Md. Sept. 5, 2024) .......................................... 12
*In re Mid-Atlantic Toyota Antitrust Litig.*,
  605 F. Supp. 440 (D. Md. 1984) .................................................................................................. 13
*In re Vitamins Antitrust Litig.*,
  2000 WL 1737867 (D.D.C. Mar. 31, 2000) ................................................................................ 8
*Jiffy Lube*,
  927 F.2d .......................................................................................................................................... 6
*Jones v. Dominion Resources Services, Inc.*,
  601 F.Supp.2d 756 (S.D.W.Va. Mar. 6, 2009) .......................................................................... 11
*Krakauer*,
  2018 WL 6305785 ........................................................................................................................ 13
*Malchman v. Davis*,
  761 F.2d 893 (2d Cir. 1985) ....................................................................................................... 11
*MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ......................................................................................... 7
*Officers for Justice v. Civ. Serv. Com'n of City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ..................................................................................................... 11

*Sharp Farms v. Speaks*,
    917 F.3d 276 (4th Cir. 2019) .................................................................................................. 6
*Skochin v. Genworth Financial,
    LLC*, 2020 WL 6708388 (E.D. Va. Nov. 13, 2020) .............................................................. 12
*U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*,
    No. 1:04CV199, 2009 WL 3756343 (E.D. Va. Oct. 14, 2009) .............................................. 9
*United States ex rel. Bibby v. Wells Fargo Bank*,
    369 F. Supp. 3d 1346 (N.D. Ga. 2019) .................................................................................. 9
*United States ex rel. Marchese v. Cell Therapeutics, Inc.*,
    2007 WL 4410255 (W.D.Wash. Dec.14, 2007) .................................................................. 10

**Statutes**

31 U.S.C. § 3729 ............................................................................................................................ 3
31 U.S.C. § 3729(a)(1)(A), (B), and (G) .................................................................................... 3, 4
31 U.S.C. § 3730(d)(2) ......................................................................................................... 2, 8, 10

**Other Authorities**

132 Cong. Rec. H9382-03 .............................................................................................................. 9
1986 U.S.C.C.A.N. 5266 ................................................................................................................ 9
1986 U.S.C.C.A.N. 5293 ................................................................................................................ 9
S. Rep. No. 99-345 ......................................................................................................................... 9
S.Rep. No. 99–345 ....................................................................................................................... 10

Plaintiff-Relator, Karen Bloomfield ("Relator"), respectfully submits this Memorandum of Law in Support of Motion for Approval of the Parties' Settlement.  For the reasons explained below, Relator respectfully submits that the Court should approve the settlement reached by the parties (the "Settlement"), which was reached as a result of hard-fought, arms' length negotiations with the assistance of an experienced mediator, the Honorable Gerald B. Lee (ret.) of the United States District Court for the Eastern District of Virginia, and with the full participation of the United States of America ("United States"), in its capacity as the real party in interest in these proceedings.  Defendant, Engineered Structures, Inc. ("ESI" or "Defendant"), and the United States consent to the relief sought in the Motion for Approval of the Parties' Settlement.[1]

## I. INTRODUCTION

The Motion seeks approval of a Settlement negotiated over two lengthy mediation sessions (on September 15, 2025 and October 20, 2025) with Judge Lee after the parties filed cross-motions for summary judgment, which were denied by the Court, and the parties were engaged in the process of preparing the case for trial on November 17, 2025.[2]  As reflected in the Settlement Agreement, a true and correct copy of which is attached as Exhibit "A," and the Side Agreement, a true and correct copy of which is attached as Exhibit "B," ESI has agreed to pay

---

[1] Relator and her counsel apologize to the Court for any confusion on their part in connection with the Court's Order dated October 21, 2025, ECF No. 139.  Relator and her counsel believed that a formal motion for approval only was required if full agreement had not been reached regarding all terms with respect to the Settlement, including the amount of relator share and reimbursement of attorneys' fees and expenses, because in the experience of Relator's counsel, the United States Attorney's Office, and ESI's counsel, approval is typically only required in contested matters where, unlike here, the parties have not reached agreement regarding all Settlement terms.

[2] The parties also participated in a settlement conference on March 10, 2025 with the Honorable Ivan D. Davis, U.S. Magistrate Judge, at the direction of the Court.

1

the United States $5,750,000 to resolve the claims asserted in this action, has agreed to pay Relator's counsel's reasonable attorneys' fees and expenses of ▇▇▇▇ (which, as discussed below, is considerably below the amount of Relator's counsel's total lodestar in this case).[3] The total amount paid by ESI as a result of the Settlement will be ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ of the Paycheck Protection Program ("PPP") loan at issue in this case. In addition, as reflected in the Settlement Agreement, the United States has agreed to pay Relator 29.5% of the recovery obtained in this action ($1,696,250), which is within the statutory range of 25-30% set forth in 31 U.S.C. § 3730(d)(2).[4] Pursuant to the terms of the Settlement Agreement and Side Agreement, ESI's payment to the United States is to occur within thirty (30) days of the execution of the Settlement Agreement and the payment of the agreed-upon attorneys' fees and expenses is to occur on or before December 31, 2025. For the reasons explained below, Relator respectfully submits that the terms of the Settlement are fair and reasonable and should be approved.

## II. BACKGROUND

### A. The Parties

Relator is a former employee of ESI who held a variety of positions with the company from October 1997 to March 2020, the final of which was Senior Assistant Project Manager. Relator was laid off on March 27, 2020, just before ESI applied for a PPP loan in April to cover

---

[3] Relator files this redacted version of this Memorandum of Law in recognition of the fact that ESI will be filing a motion on this date to maintain those redactions, as well as the Side Agreement, under seal. Relator has provided unredacted copies of the filing to chambers on this date and takes no position as to whether ESI's Motion to Seal should be granted.

[4] It is Relator's understanding that the policy of the United States is that thirty percent (30%) should only be awarded in instances in which the Relator proceeds to trial and judgment but that an award of 29.5% in this case has been agreed to by the United States as reasonable in light of the considerable work performed by Relator and her counsel and the fact that the case resolved just weeks before trial was scheduled to commence.

payroll costs during the COVID-19 pandemic.

ESI is an Idaho corporation with offices in Idaho, Colorado, Oregon, and Virginia. ESI is a construction management and general contracting company that was deemed an "essential" business by the Government during the COVID-19 pandemic. At the time this action was initiated, ESI was co-owned by Tom Hill ("Hill") and Neil Nelson ("Nelson"), who also wholly own various other companies, including N&T Holdings, LLC, ESTECH, LLC ("ESTECH"), and Crown Equipment Solutions, LLC. In April 2020, ESI applied for and received a PPP loan from the Small Business Administration ("SBA") in the amount of $8,607,900.00, the full amount of which was forgiven in June 2021.

### B.     Relator's Legal Claims

As stated in the First Amended Complaint ("Complaint" or "Compl.," ECF No. 39), Relator alleges that ESI violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, by knowingly submitting false and fraudulent claims to the Government in connection with its PPP loan application and PPP loan forgiveness application. Relator brings three counts, for violations of 31 U.S.C. § 3729(a)(1)(A), (B), and (G).

Specifically, Relator alleges that (1) ESI falsely certified on the PPP Borrower Application the number of full-time equivalent employees on ESI's payroll, as well as the dollar amounts of its payroll costs, and failed to provide truthful and accurate certifications with respect to full-time equivalent employees and payroll costs in good faith; falsely certified on the PPP Borrower Application that the information provided in its application documents and in the supporting documents was true and accurate in all material aspects (and failing to act in good faith in providing such certifications); and knowingly and intentionally retained monies that it wrongly received through false PPP applications and certifications, instead of returning the monies in violation of the False Claims Act and thereby violating the reverse false claim

provisions of the FCA.  Compl., at ¶ 2.

### C. Procedural History

Relator filed this Action in the Eastern District of Virginia on July 14, 2022.  After Defendant moved to dismiss on May 24, 2024, Relator amended as of right and filed the now-operative Amended Complaint ("Complaint") on June 4, 2024.  Defendant filed a Motion to Dismiss (ECF No. 41) on June 16, 2024, contending that the Complaint fails to state a claim on all three counts, which Relator timely opposed (ECF No. 42).

On October 29, 2024, the Court denied Defendant's motion to dismiss in its entirety and found that the Complaint adequately pleads causes of action under 31 U.S.C. § 3729(a)(1)(A), (B), and (G).  *See* ECF No. 46.  Defendant answered the Complaint on November 12, 2024 (ECF No. 50), and the parties commenced discovery.

Following the Court's issuance of its Scheduling and Pretrial Order on November 20, 2024 (ECF No. 55), the parties engaged in extensive discovery efforts and correspondence, including written discovery, several meet and confers, and the production of over 7,000 documents.  Relator took nine fact and expert depositions (two witnesses had to reappear for continued depositions), including the deposition of ESI's corporate designee, while Defendant took the deposition of Relator, four confidential witnesses identified in the Complaint, and Relator's expert witness.  Relator also issued third-party document subpoenas directed to various financial institutions with connections to ESI and its PPP loan, including A10 Capital, Harris CPA, Idaho First Bank, PNC, Zurich, and Washington Trust Bank, as well as to the following third party temporary employment agencies: PeopleReady, First Class Cleaning, Perfectos, and Tradesmen International.

Defendant's production consisted of communications among ESI executives and

employees and documents pertaining to the PPP loan application and forgiveness application, ESI's payroll, the financial state of the company during the Relevant Time Period,[5] the layoffs conducted in early 2020, and any rehiring efforts. Defendant continued to produce documents until the close of discovery. Documents produced by Harris CPA and Zurich consisted of communications and documents pertaining to ESI's financial status during the Relevant Time Period, including ESI's financial statements (and supporting documentation of loans, expenses, bonuses, debts, and available credit). Documents produced by Idaho First Bank pertained to ESI's efforts to obtain its PPP loan, including payroll records, tax documents, rent statements, and calculations for the PPP Loan Forgiveness Application. Documents produced by Washington Trust Bank consisted of statements for ESI's primary bank accounts during the Relevant Time Period as well as the PPP checking account that received the PPP loan amount. Documents produced by temporary staffing agencies consisted of contracts and documents/invoices for the temporary workers provided to ESI.

The parties also each produced robust and detailed expert reports from accounting experts Andrew S. Adams and Lizette Martinez as well as for SBA official Kathryn Frost, each filed cross-motions for summary judgment, ECF Nos. 90 and 93, (which motions were denied by the Court) ECF No. 111, and each filed *Daubert* motions challenging the expert testimony proffered by the opposing party, ECF Nos. 73 and 76, which the Court granted in part and denied in part in a comprehensive opinion. ECF No. 110. The Court subsequently required supplemental briefing

---

[5]For purposes of this Statement, the Relevant Time Period, as discussed between Parties during discovery exchanges, refers to January 1, 2019, through December 31, 2021. Relator notes that Defendant asked for a timeframe of January 1, 2019, through June 11, 2021, which Relator agreed to with respect to certain discovery requests, but did not agree to with respect to discovery pertaining to ESI's economic standing before, during, and after the COVID-19 pandemic (which is pertinent to ESI's economic necessity for the PPP loan and PPP loan forgiveness).

regarding the issue of whether temporary employees should be included in the employee headcount for determining PPP eligibility, ECF No. 114, and issued a comprehensive opinion addressing that issue on October 20, 2025, ECF No. 137, while the parties were mediating and at a time that the proposal that ultimately was accepted by ESI had been made by Relator with the consent of the United States.  For the reasons explained below, Relator respectfully submits that the Settlement is fair, reasonable and adequate and should be approved by the Court.  As reflected in the Settlement Agreement and Side Agreement, ESI and the United States agree.

### III. ARGUMENT

#### A. The Settlement Warrants Approval

The Settlement is emblematic of the compromise favored by courts in this District and Circuit.  Borrowing from class action jurisprudence since there is an absence of developed law on judicial review regarding the fairness of FCA settlements, the adequacy of the settlements should evaluated by the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement."  *Jiffy Lube*, 927 F.2d at 159; *see also 1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 526 (4th Cir. 2022) (applying same factors).  "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses."  *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019).

While Relator and her counsel believe in the strength the claims at issue, it bears noting that ESI had proffered defenses not only based upon falsity but also on the basis of materiality

6

and scienter that could have proven fatal to Relator's claims brought on behalf of the United States. The Settlement also provides for payment of a high percentage of the amount of the PPP loan at issue without the risk of a reduced recovery or no recovery. *See* Declaration of Bruce D. Parke ("Parke Decl.") attached as Exhibit "C", at ¶ 7. The Settlement "assures that the [United States] receives an immediate, tangible benefit instead of a future uncertain award." *Compton v. North Central Virginia Restaurants, Inc.*, 2022 WL 4008719, at *3 (W.D. Va. Sept. 2, 2022); *see also MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 667 (E.D. Va. 2001) (finding "a bird in hand is worth two in the bush" in the context of settlement). In view of the risks of trial, as well as the potential years of delay of appeals taken by either party, Relator and her counsel believe that Settlement is a very favorable outcome. *See* Parke Decl., at ¶¶ 7–8. The Court should also place considerable weight on the opinion of experienced and informed counsel supporting the settlement. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) (considerable weight should be placed on the opinion of experienced and informed counsel); *MicroStrategy, Inc.*, 148 F. Supp. 2d at 665. Here, not only do Relator's counsel – who are extremely experienced in this field – believe that the Settlement is fair and reasonable, but the United States, in its capacity as the real party-in-interest and the beneficiary of the Settlement, is supportive of the resolution reached and has approved it. Relator respectfully submits that the Court should afford significant weight to this factor in approving the Settlement.

Although there is no definitive list of enumerated factors, "assessing the reasonableness of a settlement involves examining its amount." *1988 Trust*, 28 F.4th at 527; *see In re Lumber Liquidators*, 952 F.3d at 484. The relative recovery of the Settlement compares very favorably to the settlements of other PPP FCA cases. For example, a settlement in the Southern District of New York recently resulted in payment of $360,000 to resolve two actions involving

fraudulently obtained PPP loans in the amount of $2.3 million, as well as a falsely obtained Restaurant Revitalization Fund Grant.  *See* https://www.sba.gov/article/2025/08/13/us-attorney-announces-settlement-members-only-social-club-covid-relief-fraud.  Indeed, in 2023, settlements and judgments in PPP FCA cases resulted in average settlements and judgments of $179,000.  *See* https://www.insidethefalseclaimsact.com/civil-fraud-recovery-statistics-2023/#:~:text=The%20press%20release%20acknowledged%20that,total%20False%20Claims%20Act%20recoveries; https://www.justice.gov/archives/opa/pr/false-claims-act-settlements-and-judgments-exceed-268-billion-fiscal-year-2023.  Likewise, in 2024, PPP FCA cases resulted in average recoveries of $1 million – an amount well below the result achieved here.  *See* https://www.justice.gov/archives/opa/pr/false-claims-act-settlements-and-judgments-exceed-29b-fiscal-year-2024.  And, of course, "[t]he test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable." *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *2 (D.D.C. Mar. 31, 2000).  The Settlement is adequate and favorable compared to settlements in other similar cases.  Relator respectfully submits it should, therefore, be approved.

### B.   The Agreed-Upon Percentage Payable To Relator Should Be Approved

Section 3730(d)(2) of the False Claims Act provides that in a declined case:

> [Relator] shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds.

31 U.S.C. § 3730(d)(2).  Here, Relator agreed with the United States that a 29.5% share of the recovery under the Settlement Agreement was reasonable, as reflected in the parties' Settlement Agreement.  Relator respectfully submits that this percentage, agreed to by the federal offices responsible for prosecuting False Claims Act cases, is reasonable and should be approved by the Court.

In *United States ex rel. Bibby v. Wells Fargo Bank*, 369 F. Supp. 3d 1346 (N.D. Ga. 2019), the court addressed the reasonableness of the percentage of the False Claims Act award to be provided to a relator.  Unlike the present case, in *Bibby*, the amount of the relator's share was disputed between relators and the government.  The court stated that the factors that guide the decision on a relator's share include: "(A) the significance of the information provided to the Government; (B) the contribution of the person bringing the action to the result obtained; and (C) whether the information which formed the basis for the suit was known to the Government." *Id*. at 1348 (quoting S. Rep. No. 99-345 at 28 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5293).  The court also cited the Congressional finding that:

> In those cases where the person carefully develops all the facts and supporting documentation necessary to make the case and presents it in a thorough and detailed fashion to the Justice Department as required by law, and where that person continues to play an active and constructive role in the litigation that leads ultimately to a successful recovery to the United States Treasury, the Court should award a percentage substantially above [the minimum] and up [to the maximum].

*Id*. at 1349 (quoting 132 Cong. Rec. H9382-03 (Oct. 7, 1986)).  A review of these considerations demonstrates that the agreement between Relator and the United States for a Relator's Share of 29.5% is reasonable.  First, the information provided to the United States was significant.  Had Relator not raised her claims with the United States, it is virtually certain that the alleged fraud would have gone undetected.  Second, Relator and her counsel played an extremely active and constructive role in this litigation that led to a very successful recovery.  Indeed, an award of 29.5% Relator Share is entirely consistent with the guidelines published by the Department of Justice for determining the amount that should be awarded. *See* https://www.vsg-law.com/wp-content/uploads/2016/08/doj_relator.pdf.  As the Court explained in *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, No. 1:04CV199, 2009 WL 3756343, at *2 (E.D. Va. Oct. 14, 2009), *aff'd sub nom.*

*U.S. ex rel. DRC, Inc. v. Custer*, 446 F. App'x 561 (4th Cir. 2011), when awarding a relator share of thirty percent (30%):

> In considering whether and how much to award a relator in excess of the 25 percent minimum mandated by the FCA, district courts should consider, *inter alia,* (i) the significance of the information provided to the government, (ii) the contribution of the person bringing the action to the result obtained, and (iii) whether the information that formed the basis for the suit was known to the government. *See* S.Rep. No. 99–345, at 28 (1986); *see also United States ex rel. Marchese v. Cell Therapeutics, Inc.,* 2007 WL 4410255, at *8 (W.D.Wash. Dec.14, 2007) (identifying the relevant factors as "(1) the significance of the evidence provided to the government; (2) the relator's contribution to the final outcome; and (3) whether the government was previously aware of the information provided' "). These and other factors, applied to the facts of this case, point persuasively to the conclusion that the relators' statutory share should be 30% of the total amount of damages and penalties awarded in this case ($9,198,000), or $2,759,400.

Here, the same analysis and reasoning clearly supports the Relator Share that was agreed-upon with the United States in the amount of 29.5%. Accordingly, under the principles outlined in *Bibby* and *Custer*, Relator respectfully submits that the Relator Share agreed upon is fair and is fully warranted.

### C. The Attorneys' Fees And Litigation Expenses Should Be Approved

31 U.S.C. § 3730(d)(2) provides for the recovery of reasonable attorneys' fees and expenses under the FCA and payable from the Defendant. Here, Relator agreed with the Defendants on the amount of the attorneys' fees and costs to be paid pursuant to section 3730(d)(2). The agreed-upon attorneys' fees and expenses of ▆▆▆▆▆▆ are fair and reasonable and should be approved. Indeed, the agreed-upon amount Plaintiff requests and has agreed upon is significantly less than Relator's counsel's total attorneys' fees and expenses of over $3,396,069.69 – which, as explained in the accompanying Parke Decl., is itself less than the full amount of fees and expenses that will be incurred by Relator's counsel in this action.

The Supreme Court has endorsed the consensual resolution of the amount of attorneys'

fees to be paid to plaintiffs' counsel in representative litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally . . . litigants will settle the amount of a fee."). "[T]he court's intrusion upon what is otherwise a private consensual agreement . . . must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civ. Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Where fee negotiations were conducted at arm's-length and there is no evidence of collusion, courts accord "substantial deference" to parties' agreements. *Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005); *see also Malchman v. Davis*, 761 F.2d 893, 905 n. 5 (2d Cir. 1985) ("[W]here, as here, the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems . . . that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged."). Therefore, when reviewing Relator's attorneys' fees and expenses, Relator respectfully submits that the Court should afford deference to the fact that they were negotiated at arm's-length.

The fee request is also reasonable considering the complexity and duration of this case. "In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement, and the amount and nature of discovery." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 465 (D. Md. Jan. 31, 2014) (citing *Jones v. Dominion Resources Services, Inc.*, 601 F.Supp.2d 756, 761 (S.D.W.Va. Mar. 6, 2009). Since filing the case three years ago,

11

Relator's counsel has diligently and zealously prosecuted this case against a vigorous defense from experienced defense counsel and a corporate defendant with significant resources. *See* Parke Decl., at ¶¶ 8–13. Relator's counsel engaged in extensive document discovery, took and defended numerous fact witness depositions, took and defended expert depositions, conducted third party discovery, briefed and overcame motions to dismiss and for summary judgment, and prepared for trial. *See id.* Relator's counsel was actively preparing for trial when the case settled. *See id.* Relator's counsel's hard-fought, persistent, and diligent efforts in this complex case led to the favorable outcome for the United States, which justifies the requested fees and reimbursement of expenses. *See id.*

Although the lodestar cross-check is a secondary method to assess reasonableness, Relator respectfully submits that the fact that the agreed-upon attorneys' fees and expenses is more than ▮▮▮▮▮ less than Relator's counsel fees and expenses establishes the inherent reasonableness of the amount agreed-upon. *See Skochin v. Genworth Financial LLC*, 2020 WL 6708388, at *10 (E.D. Va. Nov. 13, 2020);[6] *see also Bd. of Trs., Shee Metal Workers' Nat. Pension Fund v. Four-C-Aire, Inc.*, No. 1:15CV105 LMB JFA, 2015 WL 3603804, at *5 (E.D. Va. June 5, 2015)("where defendant has not contested the hourly rates…, the court will accept the allegations set forth by the plaintiffs concerning the reasonableness of those rates"). And, it bears noting that a court in this Circuit recently approved of Relator's counsel's hourly rates in a similarly complex matter as fair and reasonable given the quality of the work performed in the matter and the risk of nonpayment undertaken by counsel. *In re MedStar ERISA Litig.*, No. CV

---

[6] Relator's counsel's hours are supported by the billing records maintained by each firm. *See* Parke Decl., at ¶ 7 n.1. In addition, Relator's counsel's hourly rates used to calculate the lodestar have been recently approved in similar complex litigation in addition to the *Medstar ERISA Litigation* referenced above. *See Biogen*, No. 1:20-cv-11325-DJC, ECF No. 128, at 7; *Garthwait*, No. 3:20-cv-00902-JCH, at ECF No. 205, at 7.

JKB-20-1984, 2024 WL 4110941, at *6–9 (D. Md. Sept. 5, 2024).

Courts have generally held that fee requests with lodestar multipliers of up to four times are common and will be approved as reasonable attorneys' fees. *See Goldberg v. Marriott PLP Corp.*, 33 F. Supp. 434, 439 n. 6 (D. Md. Oct. 22, 1990); *see also Krakauer*, 2018 WL 6305785, at *6 (finding that a lodestar multiplier of 4.63 was reasonable); *Deloach v. Philip Morris Co.*, 2003 WL 23094907, at *7 (M.D.N.C. Dec. 19, 2003) (approving attorneys' fees amounting to 4.5 times lodestar). Here, the fact that Relator's counsel have agreed to a negative multiplier on their lodestar – of approximately ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ – a discount of more than ▇▇▇ of their actual fees devoted to this engagement – respectfully confirms the reasonable nature of the attorneys' fees agreed-upon. Moreover, as reflected in the accompanying Declaration, Relator has incurred costs and expenses in the amount of $444,524.69 – over 78% of which ($344,194.03) consists of payments to experts and investigators. *See* Parke Decl., at ¶ 12. Reimbursable expenses include court costs, transcripts, travel, contractual personnel, document duplication, expert witness fees, photocopying, long distance telephone charges, and postal fees. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 605 F. Supp. 440, 448 (D. Md. 1984); *see also Almendarez v. J.T.T. Enters. Corp.*, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010).

Relator seeks to recover $444,524.69 in unreimbursed litigation expenses that were reasonably and necessary incurred in prosecuting this action, which amount is included in the ▇▇▇▇▇▇▇▇▇ that ESI has agreed to pay Relator's counsel. *See* Parke Decl., at ¶ 12. These expenses include expert witness fees for a specialized expert and his supporting staff, costs for multiple depositions, filing and mailing services, and other litigation-related expenses. *See id.* Relator's counsel advanced these out-of-pocket expenses on a contingent basis and should be

13

awarded reimbursement of these expenses as they were all necessary to the prosecution of this complex case at a high level which led to its successful result for the United States. *See id.*

## IV. CONCLUSION

For the foregoing reasons and all those appearing on the record, Plaintiff respectfully submits that the Court should approve the Settlement, as well as the agreed-upon Relator Share percentage agreed-upon amount of attorneys' fees and expenses, all of which has been agreed to with the consent of the United States.

Dated: November 7, 2025                                Respectfully submitted,

/s/ *Patricia D. Ryan*
Patricia D. Ryan
Virginia Bar No. 35945 (EDVA – Admitted)
6106 Harvard Ave., PO Box 633
Glen Echo, Maryland 20812
Telephone: (240) 481-6284
Email: patriciaryan@pdrlaw.com

Glenn Chappell, VA Bar No. 92153
Tycko & Zavareei LLP
2000 Pennsylvania Ave. NW, Suite 1010
Washington, DC 20006
Telephone: (510) 588-5299
Facsimile: (202) 973-0950
Email: gchappell@tzlegal.com

James E. Miller
Miller Shah LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com

Bruce D. Parke
Alec J. Berin
Miller Shah LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505

Facsimile: (866) 300-7367
Email: bdparke@millershah.com
ajberin@millershah.com

Anna K. D'Agostino
Madison A. Gregg
Miller Shah LLP
225 Broadway, Suite 1830
New York, NY 10007
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: akdagostino@millershah.com
magregg@millershah.com

Rachel V. Rose – Attorney at Law, PLLC
P.O. Box 22718
Houston, Texas 77227
Telephone: (713) 907-7442
Email: rvrose@rvrose.com

*Attorneys for Relator*

15